# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD GLASS, | CASE NO. 1:04-cv-05466-OWW-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| R. BEER, et al., | (Doc. 103) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Defendants' Motion for Summary Judgment**

**I.      Background**

Plaintiff Donald Glass, a state prisoner proceeding pro se, filed this civil rights action on March 22, 2004, pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's original complaint against Defendants Beer, Keener, Sloss, Morales, and Dill for excessive force and sexual abuse in violation of the Eighth Amendment, and against Defendants Beer, Keener, Sloss, Morales, Dill, Butts, Adkison, Gonzales, Castillo, Buckley, Streeter, Marshall, and Lloren for retaliation in violation of the First Amendment. Pending before the Court is Defendants' motion for summary judgment, filed August 8, 2006. Following extensive discovery, Plaintiff filed his opposition on May

///

1

22, 2008.[1,2] Defendants did not file a reply, and their motion has been deemed submitted pursuant to Local Rule 78-230(m).

## II.  Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on January 26, 2005. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 22.)

[2] Plaintiff's cross-motion for summary judgment is not considered by the Court because it was not timely filed. (Doc. 179.) Only Plaintiff's opposition to Defendants' motion will be considered.

2

material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).  Plaintiff's complaint is verified and will be considered by the Court in resolving Defendants' motion to the extent that it sets forth admissible facts.[3]  The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.  Id.

**III.   Defendants' Motion**

    **A.   Plaintiff's Eighth Amendment Excessive Force and Sexual Abuse Claim**

        **1.   Summary of Allegations Set Forth in Complaint**

On October 23, 2001, Defendant Beer and three custody officers approached Plaintiff's cell and told him to cuff up for a cell move.  (Doc. 1, Comp., ¶¶29, 30.)  Defendant Beer would not allow Plaintiff to cuff up at the cuff port, and he formed an extraction team and along with Defendants Keener, Sloss, Morales, and Dill, stomped and kicked Plaintiff in the face and head, caused deep

---

[3] Plaintiff's opposition itself is unverified and therefore, the arguments set forth therein have no evidentiary value.  Moran v. Selig, 447 F.3d 748, 759-60 (9th Cir. 2006); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

3

gashes in Plaintiff's wrist and ankle, and sexually assaulted Plaintiff by inserting a foreign object into Plaintiff's anus. (Id., ¶33, 34.) After Plaintiff was taken outside on a litter, he was sexually assaulted and tortured for another thirty to forty minutes. (Id., ¶40.) Plaintiff was subsequently hospitalized from October 23, 2001, to November 2, 2001. (Id., ¶47.)

### 2.     **Defendants' Position**[4]

Defendants argue that they are entitled to judgment on Plaintiff's Eighth Amendment claim against them because the facts do not support Plaintiff's version of events. Defendants state that on October 23, 2001, Plaintiff refused to secure his food port and reached his arms through it, "taking it hostage." Defendant Beer was summoned and succeeded in securing the food port, at which time he observed Plaintiff with a cup of fecal matter. (Doc. 104, Ex. D, Beer Dec., ¶4.) Plaintiff threatened Defendant Beer and other officers with the cup of feces. (Id.) Defendant Beer was directed by Defendant Keener to move Plaintiff to a cell with an extended food port, which would make it more difficult for Plaintiff to throw feces. (Beer Dec., ¶4; Ex. E, Keener Dec., ¶4.)

At approximately 1145 hours, Defendant Beer approached Plaintiff's cell and directed him to submit to a voluntary cell move to 4A2L-25, which had been prepared for him. (Beer Dec., ¶4.) Plaintiff refused to do so, and a cell extraction team including Defendants Sloss, Morales, and Dill was formed. (Id.) Plaintiff was encouraged to voluntarily leave the cell, including through the use of clinical psychiatric technician, but Plaintiff refused and after videotaped introductions were completed, Beer, Keener, and the extraction team approached the cell. (Beer Dec., ¶4; Keener Dec., ¶4.)

Plaintiff refused Defendant Keener's order to submit to an unclothed body search for weapons, but as the cell door opened, Plaintiff complied with Keener's order to lie down in a prone

---

[4] Declarations offered in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). The requirements of personal knowledge and competence to testify may be inferred from the declaration itself. Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990). Inexplicably, all thirteen of the defendants submitted virtually identical declarations, despite the fact that this action is not limited to one claim arising from an event at which all thirteen were present. (Exs. D-P.) It is simply not believable that Defendants possess personal knowledge as to all of the information set forth in their declarations. Therefore, the only evidence submitted by declaration that will be considered is that which the Court is able to determine is based on personal knowledge. For example, Defendant Beer was present prior to, during, and after the cell extraction and is competent to testify as to what occurred. There is no allegation or showing that Defendant Lloren was present, and therefore, Lloren may not attest to what occurred.

position. (Keener Dec., ¶4.) The extraction team entered the cell to place Plaintiff in restraints on Defendant Beer's order, and as the restraints were being applied, Plaintiff began resisting by moving his entire body, leading staff to have to use physical force to restrain him. (Beer Dec., ¶4; Keener Dec., ¶4.) Defendant Beer entered the cell and warned Plaintiff that if he continued resisting, he would be sprayed with O.C. pepper spray. (Id.) Plaintiff complied, was restrained, and was taken on a stokes litter to the Acute Care Hospital for medical/psychiatric evaluation by Defendants Sloss and Morales, and other officers. (Id.)

At the hospital, Plaintiff claimed to be feeling suicidal and said that staff had used excessive force against him. (Ex. F, Sloss Dec., ¶4; Ex. G, Morales Dec., ¶4.) Abrasions and redness to Plaintiff's right shoulder and right wrist, and an avulsion to Plaintiff's left foot were noted. (Ex. F, Sloss Dec., Attach. 2.) Dr. Meis found several musculoskeletal strains, but no "obvious lacerations or hemotomas except for very minor superficial laceration on the right lateral wrist" and "on the medial left foot area." (Ex. C.) Plaintiff was admitted to the hospital crisis unit for psychiatric observation, and a Rules Violation Report (CDCR form 115) charging Plaintiff with resisting a peace officer in the performance of his duties and an Incident Report were prepared. (Ex. C; Beer Dec., ¶4.)

Defendants deny using excessive force on Plaintiff or sexually assaulting him. Defendants contend that medical findings contradict Plaintiff's allegation that he was stomped and sexually assaulted, and that any force used against him was reasonable under the circumstances given his failure to comply with orders and his resistance to the application of restraints. Defendants contend that when questioned about the specifics of his sexual assault allegations during his deposition, Plaintiff could not recall and provided nonsensical or speculative answers, belying his claim of assault. (Ex. Q.)

### 3. **Plaintiff's Position**

In support of his claims that excessive force was used against him and he was sexually assaulted, Plaintiff attests that on October 22, 2001, he filed appeal log number CSP-C-5-01-3399,

in which he complained that Defendant Beer was spreading false rumors about him.[5] (Doc. 173, Opp., P. Ex. 2, Glass Dec., ¶2.) The next day, Defendant Beer had the appeal in his hand and was waiting for Plaintiff when Plaintiff returned from the law library. (Id., ¶3.) Defendant Beer ordered escorting staff to bring Plaintiff into his office, but Plaintiff refused to go because Defendant had previously threatened him while in the office. (Id., ¶4.) Defendant Beer followed Plaintiff to his cell, threatening to harm him for filing the appeal. (Id., ¶5.) Plaintiff told Defendant that he was going to file a federal lawsuit against Defendant for retaliation, and for slander and endangerment arising out of the false rumor that Plaintiff was a snitch. (Id., ¶6.) Defendant told Plaintiff he would be back and left. (Id., ¶7.)

At approximately 11:15 a.m., Defendant Beer, Sergeant Anderson, and several other guards arrived at Plaintiff's cell, without a handheld or mobile plexiglass shield, which would have been in compliance with policy and procedure if they believed Plaintiff had a cup of feces in his cell as claimed. (Id., ¶9.) Defendant Beer ordered Plaintiff to cuff up and exit his cell. (Id., ¶10.) Plaintiff asked why, and was told he was being moved to another cell. (Id., ¶¶11-12.) Plaintiff told Defendant Beer that he was well aware of Beer's practice of beating inmates after having them cuff up and then writing false Rules Violation Reports against them, and Plaintiff refused cuff up and asked Beer if it was his intention to carry out his threat to beat Plaintiff up. (Id., ¶¶13-14.) Defendant Beer told Plaintiff he would have to cuff up and find out. (Id., ¶15.) Plaintiff told Defendant Beer he was willing to cuff up and be moved, but requested it be videotaped for protection. (Id., ¶16.) Defendant Beer informed Plaintiff that a video camera would not protect him because Beer was going to get him no matter what. (Id., ¶18.)

Defendant Beer departed with the other staff members, and at approximately 12:00 p.m., S. Hense, a female psychiatric tech, arrived and asked Plaintiff if he was willing to come out of his cell to move rather than be extracted. (Id., ¶¶20-21.) Plaintiff told Hense he was willing to exit his cell voluntarily now that a video camera was going to be used, and Hense said she would relay the information. (Id., ¶¶22-23.)

---

[5] Plaintiff also attests that in the appeal, he complaint that Defendant was threatening to do him great bodily harm if he did not quit filing complaints and lawsuits. However, a review of the appeal itself does not support that Plaintiff grieved any retaliatory conduct at the initiation of the appeal on October 22, 2001. (Ex. 10.)

6

At approximately 12:45 p.m., Defendants Beer, Dill, Keener, Morales, and Sloss approached Plaintiff's cell while Sergeant Anderson operated the video camera. (Id., ¶25.) They did not have any plexiglass shields. (Id., ¶26.) Defendant Keener asked Plaintiff if he was willing to cuff up and leave the cell voluntarily, but also ordered him to strip down and lie on the ground. (Id., ¶¶27-28.) Plaintiff did not refuse to comply, but before he could comply, Defendant Keener had his cell door opened, and Defendants Beer, Morales, and Sloss entered the cell and stomped, kicked, and punched him. (Id., ¶¶28-32.) Plaintiff did not resist their attempts to place him in handcuffs and leg irons. (Id., ¶33.) Defendant Beer kicked Plaintiff in the left eye, Defendant Morales caused a deep gash in Plaintiff's right wrist by digging Plaintiff with the sharp metal handcuff ridges, and Defendant Sloss caused a deep gash in Plaintiff's left ankle by digging Plaintiff with the sharp metal leg restraints. (Id., ¶¶35-37.) Plaintiff was then carried outside on a litter. (Id., ¶38.)

After Plaintiff was removed from the litter, he informed Defendants Keener and Dill that he was injured and that excessive force had been used to injure him. (Id., ¶39.) Defendant Keener ordered the video camera turned off, a triangle bar was placed on Plaintiff's handcuffs, and Plaintiff was dragged all over the dirt and grass area for approximately thirty minutes while someone rammed a side baton or foreign object into Plaintiff's anus and sexually assaulted him. (Id., ¶¶40-41.) Plaintiff was then taken inside and placed in a holding cell, where his restraints were removed. (Id., ¶43) Plaintiff noticed his ankles had been bandaged, his boxer shorts were pulled down below his buttocks, and he was bleeding from his anus. (Id., ¶¶44-45.) Plaintiff attests that Defendant Beer entered the hallway area and bragged that he kicked Plaintiff in the face and rammed his baton up Plaintiff's anus, and that he did so to punish Plaintiff for filing appeal log number CSP-C-S-01-3399. (Id., ¶46-47.)

Sergeant K. Davis and another white, male sergeant came into the hallway area to conduct a videotaped interview with Plaintiff. (Id., ¶49.) Plaintiff showed them his ankle and wrist injuries and the blood on his boxer shorts, and said on the videotape that Defendants rammed a foreign object into his anus and sexually assaulted him. (Id., ¶50.)

Defendants Beer and Keener then placed a spit hood over Plaintiff's face and escorted him to the Acute Care Hospital, where he was examined by Dr. Meis. (Id., ¶¶51-52.) Defendants Beer

7

and Keener ordered Dr. Meis not to remove the spit hood to examine Plaintiff's facial injuries and not to document anything related to Plaintiff's allegation of sexual assault or Plaintiff's anal injury. (Id., ¶52.) Plaintiff was admitted to the Acute Care Hospital from October 23, 2001, to November 2, 2001, and contends that his ankle became infected from lack of medical care. (Id., ¶53.)

### 4. Discussion

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

///

The parties agree on virtually nothing except that on October 23, 2001, at California State Prison-Corcoran, Plaintiff was told to prepare for a cell move, and that Plaintiff was eventually restrained, removed from his cell, and taken to the Acute Care Hospital, where he was admitted. In dispute is whether Plaintiff was compliant with orders given and non-resistant to the application of physical restraints, and whether Defendants stomped, kicked, and punched him, and sodomized him with a baton. Although Defendants argue that Plaintiff was found to be in possession of fecal matter earlier in the day and threatened officers with it; that a cell move was arranged to house Plaintiff in a cell with a longer food port to make feces throwing more difficult; and that Plaintiff refused to voluntarily exit his cell and refused orders to submit to an unclothed body search for weapons, Plaintiff denies being in possession of fecal matter and contends that although he was not informed of the reason, he agreed to a voluntary cell move as long as it was videotaped and he was willing to comply with the order to strip down but was not given the chance to do so before officers entered his cell and began beating him. Defendants argue that Plaintiff resisted their attempts to place him in physical restraints while Plaintiff contends he did not resist because he did not want to get hurt. Defendants describe use of only the minimal force needed to place Plaintiff in restraints as he struggled while Plaintiff describes being stomped and hit, kicked in the eye, gashed in the wrist and ankle with metal cuffs, and sodomized.

While Defendants argue that Plaintiff's documented injuries belie his claim of excessive force and sexual assault, Plaintiff contends that he had a spit hood over his face, masking his injuries, and that the physician examining him was ordered not to take off the spit hood or document Plaintiff's claimed anal injury. Plaintiff also contends that his ankles were bandaged by the time he reached the Acute Care Hospital, and that the lack of medical attention led to an infected ankle. Further, although Defendants contend that Plaintiff's deposition testimony provides no support for his sexual assault claim, Plaintiff attested during his deposition that an object was inserted in his anus. Finally, Plaintiff contends that Defendant Beer had threatened to harm him, and he was attacked as punishment for the inmate grievances he filed, in particular the grievance he filed against Defendant Beer the previous day.

///

Viewing the evidence in the light most favorable to Plaintiff, he has raised triable issues of material fact as to his Eighth Amendment claim, and defendants are not entitled to judgment as a matter of law.

### 5. Qualified Immunity

In addition to arguing entitlement to judgment on the merits, Defendants argue they are entitled to qualified immunity on Plaintiff's Eighth Amendment claim. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Thus, if a constitutional violation occurred, prison officials are entitled to qualified immunity if they acted reasonably under the circumstances. Millender v. County of Los Angeles, 564 F.3d 1143, 1148 (9th Cir. 2009). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 129 S.Ct. 808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); McSherry v. City of Long Beach, 560 F.3d 1125, 1129-30 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); McSherry, 560 F.3d at 1130.

Defendants argue that "[t]here is no rational dispute to suggest that Plaintiff was abused or that the force employed by Defendants was excessive," and that "assuming, arguendo, that the law was clearly established and a violation occurred, Defendants are still entitled to qualified immunity
///

1  because [their] actions constituted legitimate penological purposes." (Doc. 103, 17:24-25 & 18:10-
2  12.)

3        The Court disagrees. In resolving the issue of qualified immunity, the evidence must be
4  viewed in the light most favorable to Plaintiff and all material factual disputes must be resolved in
5  favor of Plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). By 2001, it was
6  clearly established that the malicious and sadistic use of force to cause harm violates the Eighth
7  Amendment, Martinez, 323 F.3d at 1184 (citing Hudson v. McMillian, 503 U.S. 1, 6 (1992)); Watts
8  v. McKinney, 394 F.3d 710, 711 (9th Cir. 2005), as was the prohibition on sexual assault by a guard,
9  Schwenk v. Hartford, 204 F.3d 1187, 1196-98 (9th Cir. 2000). No reasonable officer would have
10 believed that stomping, kicking, gashing, and sodomizing a compliance, non-resistant prisoner in
11 order to punish him for filing prison grievances was lawful. Watts, 394 F.3d at 712. To the extent
12 that Plaintiff's version of events lacks credibility, Defendants may challenge it at trial. The Court
13 is not in the position to weigh dueling declarations, and Plaintiff has proffered evidence sufficient
14 to support his claim that excessive force was used against him on October 23, 2001. Defendants are
15 not entitled to qualified immunity.

16     **B.**     **First Amendment Retaliation Claims**

17         **1.**     **Summary of Allegations Set Forth in Complaint**

18 Plaintiff was transferred to California State Prison-Corcoran on March 1, 2001, and
19 submitted numerous inmate appeals against staff. (Comp., ¶21.) Plaintiff alleges that on September
20 19, 2001, Defendant Beer threatened Plaintiff's life and to harm Plaintiff if he continued to file
21 appeals and cause trouble. (Id., ¶27.) On October 22, 2001, Defendant Beer again threatened
22 Plaintiff and spread false rumors that Plaintiff was a child molester and had AIDS, forcing Plaintiff
23 to file another appeal. (Id., ¶28.) Plaintiff alleges that Defendants Beer, Keener, Sloss, Morales, and
24 Dill used excessive force against him and sexually assaulted him on October 23, 2001, in retaliation
25 for inmate appeal he filed several hours earlier. (Id., ¶29, 33.) In approaching Plaintiff's cell on
26 October 23, 2001, Defendant Beer told Plaintiff that he knew of the appeal and had warned him what
27 would happen if Plaintiff filed a complaint. (Id., ¶29.) Plaintiff alleges that during the cell
28 ///

extraction, Defendants Beer and Butts damaged his television and stole his hearing aids in retaliation for the appeal he filed. (Id., ¶52.)

On October 30, 2001, Defendant Beer issued a false rules violation report against Plaintiff and Defendants Beer, Keener, Dill, Sloss, and Morales issued a false crime/incident report. (Id., ¶49.)

On November 4, 2001, Plaintiff filed an inmate appeal against Defendants Beer, Keener, Dill, Sloss, and Morales for using excessive force, and against Defendants Keener and Butts for damaging Plaintiff's television and stealing his hearing aids in retaliation against Plaintiff for filing inmate appeals. (Id., ¶52.) Plaintiff alleges that Defendants Adkison and Gonzales conspired with Defendants Beer, Butts, Castillo, Buckley, Streeter, and Marshall to steal Plaintiff's television set by deeming it to be contraband and refusing to allow Plaintiff to send it out for repairs, in retaliation against Plaintiff for filing inmate appeals. (Id.)

On November 9, 2001, Defendant Butts issued a falsified property inventory sheet stating that Butts inventoried Plaintiff's property on October 28, 2001. (Id., ¶54.) On the same day, Plaintiff filed an inmate appeal grieving the damage to his television and the loss of his hearing aids. (Id., ¶55.) Plaintiff alleges that Defendants Buckley, Castillo, Streeter, Adkison, Gonzales, and Marshall refused to log Plaintiff's appeal and stated that the appeal would be combined with Plaintiff's appeal of December 5, 2001. (Id.) Plaintiff alleges that the appeals were not combined and that his appeal was withheld to prevent him from exhausting. (Id.)

On November 14, 2001, during an institutional classification committee hearing, Defendant Marshall told Plaintiff that his television set would be repaired. (Id., ¶56.)

On November 20, 2001, Plaintiff filed an appeal requesting that Defendant Lloren remove overdue photocopy charges from his trust account. (Id., ¶61.) Plaintiff alleges that the charges were removed but Defendant Lloren then froze Plaintiff's trust account in retaliation for the appeal Plaintiff filed. (Id.) Plaintiff alleges that Defendants Lloren, Atkison, and Gonzales refused to process any trust account withdrawals until the time had passed for Plaintiff to mail out his television for repairs and send his annual package home. (Id.)

///

On December 5, 2001, Plaintiff submitted two additional property appeals to Defendants Adkison and Gonzales. (Id., ¶57.) Plaintiff requested a ninety-day hold to allow him to obtain funds to mail out the television set for repairs and reimbursement for the damages caused by staff. (Id.) Plaintiff alleges that Defendants Adkison and Gonzales refused to repair the television set and then stole and repaired it for themselves, in retaliation for an earlier inmate appeal filed by Plaintiff concerning his religious property. (Id., ¶59.)

On February 5, 2002, Defendants Adkison and Gonzales notified Plaintiff that an unauthorized annual package lacking an address label and a return address label had arrived for Plaintiff. (Id., ¶63.) Plaintiff alleges that Defendants Beer, Keener, Dill, Adkison, Gonzales, and Butts had been flagging, intercepting, and photocopying Plaintiff's incoming and outgoing family mail and were aware that Plaintiff was going to receive an insured annual package. (Id., ¶64.) Plaintiff alleges that Defendants Beer, Keener, Dill, Adkison, Gonzales, Sloss, Morales, and Butts had arranged for the package to be opened in Receiving and Release by Officer Smith in January of 2002 and mailed back to Plaintiff's family with instructions to mail the package back to Corcoran without an address label or to re-insure it in the care of Officer Smith. (Id., ¶65.) After Smith received the package, he sent it to Defendants Adkison and Gonzales, who deemed it unauthorized, in retaliation for the inmate appeals filed by Plaintiff. (Id.)

Finally, on July 13, 2002, Plaintiff was assessed an eighteen month SHU term based on a Rules Violation Report issued by Defendant Butts in retaliation for the inmate appeal Plaintiff filed against him. (Id., ¶66.)

**2.    Defendants' Position**

In support of their motion, Defendants offer the following very general statements. Defendants deny acting to retaliate against Plaintiff for any reason, including that Plaintiff filed grievances against them or anyone else, and deny they acted in response to any protected activity engaged in by Plaintiff. (Doc. 104, Def. Stmt. of Undisp. Facts, ¶19.) Defendants deny extracting Plaintiff from his cell on October 23, 2001, placing him in a holding cell, or taking any other action in retaliation against Plaintiff. (Id., ¶20.) Defendants deny taking retaliatory actions against Plaintiff with respect to his television set, his hearing aids, his trust account, his annual package, or the

assessment of a SHU term. (Id., ¶20.) Defendants assert that when they acted, they did so for legitimate correctional purposes, and urge the Court to approach retaliation claims with skepticism. (Id., ¶21; Doc. 103, Memo., 12:24-25.)

### 3. Discussion

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

In this instance, Defendants fail to address Plaintiff's allegations against them with any specificity at all. It is unclear whether Defendants deny the adverse actions complained of even occurred at all or whether the actions occurred but were taken in furtherance of some legitimate correctional goal left undefined and undescribed by Defendants. While courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory," Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)), and the burden is on the prisoner to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of," Pratt, 65 F.3d at 808, Defendants must first meet their burden as the parties moving for judgment by setting forth sufficient facts to support their position.

The record is sufficient for the Court to conclude that there is a triable issue of fact regarding the motivation behind the cell extraction on October 23, 2001. While Defendants presented evidence in support of their motion for judgment on the Eighth Amendment claim that the extraction occurred because Plaintiff needed to be moved to a more secure cell and he resisted orders to do so and to submit to physical restraints, Plaintiff presented evidence that Defendant Beer bragged about kicking and sodomizing him to get him back for filing a grievance.

///

However, the record is devoid of any specific facts regarding Plaintiff's other retaliation claims. Was Plaintiff's television damaged and/or confiscated? Were Plaintiff's hearing aids confiscated? Was Plaintiff's trust account frozen and his withdrawal slips delayed until it was too late for him to mail out his television and annual package? If so, what was the asserted penological reason? If not, where is the evidence that the adverse actions complained of never occurred? While the Court is not blind to the ease at which a retaliation claim may be asserted, Defendants' bare "we didn't do it and if we did, it was for valid penological reasons" presentation is insufficient to meet their burden as the parties moving for judgment. Therefore, the Court does not reach Plaintiff's opposition, and recommends denial of Defendants' motion as to the merits of Plaintiff's retaliation claims and on qualified immunity grounds.

**IV.    Conclusion and Recommendation**

For the reasons set forth herein, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed August 8, 2006, be DENIED, and this matter be set for jury trial.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 27, 2009**                       /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE