1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   DONALD GLASS,                    )    1:04-cv-5466 OWW SMS
                                     )
10                  Plaintiff,       )    FINAL PRETRIAL ORDER
                                     )
11      v.                           )    Pretrial Conference: April
                                     )    22, 2010, 12:15 p.m.,
12   BEER, et al.,                   )    Courtroom 3
                                     )
13                  Defendants.      )    Motion in Limine Date: May
                                     )    11, 2010, 8:30 a.m.
14                                   )    Courtroom 3
                                     )
15                                   )    Trial Date: May 11, 2010
     _____ )
16

17
                    I.   JURISDICTION AND VENUE
18
         1.   The Court has subject matter jurisdiction over this
19
     federal civil rights action.   28 U.S.C. § 1331.   Venue is proper
20
     because the conduct allegedly occurred in this judicial district.
21
                        II.   JURY/NON-JURY
22
         1.   The parties request a trial by jury.
23
     / / /
24
     / / /
25
     / / /
26
     / / /
27
     / / /
28

                              1

1                          III.   FACTS

2  A.   <u>Undisputed Facts</u>[1]

3       1.   Plaintiff Donald Glass (hereinafter "Plaintiff") is,

4            and was at all relevant times, a convicted felon in the

5            custody of the California Department of Corrections and

6            Rehabilitation (hereinafter "CDCR").  At all times

7            material to the matters at issue in this case, Glass

8            was incarcerated at California State Prison, Corcoran

9            (hereinafter "CSP-Cor");

10      2.   Defendant Beer was employed by the CDCR, and worked as

11           a Correctional Sergeant at CSP-Cor at times material to

12           the matters at issue;

13      3.   Defendant Keener was employed by the CDCR, and worked

14           as a Correctional Lieutenant at CSP-Cor at times

15           material to the matters at issue;

16      4.   Defendant Sloss was employed by the CDCR, and worked as

17           a Correctional Officer at CSP-Cor at times material to

18           the matters at issue;

19      5.   Defendant Morales was employed by the CDCR, and worked

20           as a Correctional Officer at CSP-Cor at times material

21           to the matters at issue;

22      6.   Defendant Dill was employed by the CDCR, and worked as

23           a Facility Captain at CSP-Cor at times material to the

24  _____

25       [1] The facts listed as undisputed are only those facts that,
26  based on the separate pretrial statements submitted in this case,
    do not appear to be in dispute by any party to this case.  Any
27  facts that were only listed as undisputed by Plaintiff or
    Defendants are delineated in the section entitled "B.  <u>Disputed</u>
28  <u>Facts</u>."

                                2

matters at issue;

7.   Defendant Butts was employed by the CDCR, and worked as a Correctional Officer at CSP-Cor at times material to the matters at issue;

8.   Defendant Adkison was employed by the CDCR, and worked as a Property Officer at CSP-Cor at times material to the matters at issue;

9.   Defendant Gonzales was employed by the CDCR, and worked as a Correctional Officer at CSP-Cor at times material to the matters at issue;

10.  Defendant Castillo was employed by the CDCR, and worked as an Correctional Counselor II at CSP-Cor at times material to the matters at issue;

11.  Defendant Streeter was employed by the CDCR, and worked as an Correctional Counselor II at CSP-Cor at times material to the matters at issue;

12.  Defendant Marshall was employed by the CDCR, and was the Warden at CSP-Cor at times material to the matters at issue;

13.  Defendant Lloren was employed by the CDCR, and worked as an Office Assistant at CSP-Cor at times material to the matters at issue;

14.  On October 23, 2001, at California State Prison-Corcoran, Plaintiff was told to prepare for a cell move.

15.  Physical force was used to remove Plaintiff from his cell.

16.  After Plaintiff was removed from his cell, he was taken

3

1    to the Acute Care Hospital.

2    17.  Plaintiff remained in the Acute Care Hospital form

3         October 23, 2001 to November 2, 2001.

4  B.   Disputed Facts

5    1.  Plaintiff's[2]

6       a-1. From March 14, 2001, through September 22, 2002,

7            Plaintiff, a prisoner, and Defendants Adkison,

8            Beer, Buckley, Butts, Castillo, Dill, Gonzales,

9            Keener, Lloren, Marshall, Morales, Sloss and

10           Streeter were custodial officers and/or prison

11           administrators at CSP-Cor mainline and security

12           housing unit ("SHU") for which Glass filed

13           numerous inmate 602 appeals/complaints against

14           these defendants that was the motivating factor

15           behind Defendants custom or policy of retaliatory

16           acts to attack, beat, sexually assault and

17           sodomize, damage and/or steal Plaintiff's

18           television, hearing aids, annual package, and to

19           freeze Plaintiff's prison trust account, and that

20           Defendant Butts filed a disciplinary falsely

21           accusing Plaintiff of battery (but told other

22           staff that Plaintiff did not touch him) causing

23           Plaintiff to be assessed an 18 month SHU term in

24           retaliation for Plaintiff filing Appeal No. CSP-C-

25

26       [2] Though Plaintiff listed numerous factual allegations in
     his pretrial statement, the Court has only included those which
27   pertain to the claims found cognizable in the October 4, 2001
     screening order.
28

                                4

5-01-2341.

b-1. That the incidents in question initially
originated on October 22, 2001, some twenty hours
prior to Defendants'[3] unprovoked, unjustified
excessive force and failure to protect, to
gratuitously beat up Plaintiff by stomping,
kicking, and punching Plaintiff about the face,
head, back, neck, and shoulders, used the sharp
metal ridges of the hand cuffs and leg irons as a
weapon to (dig) cause deep (gashes) cuts into
Plaintiff's right wrist and left ankle who then
used a PR-24 side baton to (sodomize) sexually
assault Plaintiff in addition to maliciously and
sadistically damaging Plaintiff's television,
destroying his hearing aids and freezing
Plaintiff's inmate trust account to prevent
Plaintiff mailing (home) out his television and
annual package in order the steal them from
October 23, 2001 through September 22, 2002.

c-1. On October 23, 2001, at approximately 11:30 a.m.,
Defendants Beer, Morales, and Sloss arrived at
Plaintiff's cell without any type of movable or
hand carried shell to persuade Plaintiff to cuff
up and exit his cell solely to beat up Plaintiff

[3] Plaintiff's word "conspiracy" was deleted from this
statement of fact as there are no cognizable conspiracy claims in
this action. (Doc. 189, Plntf. Pretrial Stmt., p. 2, ¶ 3.)
(Doc. 18, Screen. F&R; Doc. 20, O. Adopt.)

1          in retaliation for filing a prison 602.

2     d-1. Defendant Beer is a known violent prison

3          supervisor and Defendants Morales and Sloss are

4          also known violent prison guards at CSP-Cor.

5     e-1. Because Plaintiff has personal knowledge in

6          addition to personally witnessing defendants Beer,

7          Morales, and Sloss violent attack and beat up

8          numerous (hand cuffed and shackled) defenseless

9          prisoners without provocation resulting in great

10         bodily injuries to these prisoners Plaintiff

11         refused to submit to being handcuffed and/or being

12         escorted by these violent prison officials to

13         another cell without the protection of a video

14         camera to film this cell move.

15    f-1. Defendant Beer reported back to his immediate

16         supervisors, Defendants Keener and Dill who gave

17         them knowingly false information that Plaintiff

18         has a cup of fecal matter in his cell and were

19         threatening to gas staff in order to persuade

20         Defendants Keener and Dill to authorize to have

21         Plaintiff cell extracted.

22    g-1. Defendants Keener and Dill as Defendants Beer,

23         Sloss, and Morales immediate supervisors were

24         absolutely aware that Defendants Beer, Morales,

25         and Sloss were violent prison officials from the

26         numerous CDC-837 incident reports submitted by

27         Defendants Beer, Morales, and Sloss that they

28         signed condoning these violent assault on

6

1  prisoners who had the authority to notify and
2  report these violent attacks to the Warden, CSP-
3  Cor Internal Affairs ("IA"), and CDCR
4  headquarters, but chose to turn a blind eye and a
5  deaf ear to Defendants Beer, Morales, and Sloss'
6  malfeasance and refused to discipline or recommend
7  that they be disciplined.

8  h-1. Defendant Marshall as chief deputy warden
9  (hereinafter "CDW"), Institution Classification
10  Committee (hereinafter "ICC") chairman who also
11  acts as the warden designee was aware that
12  Defendants Beer, Morales, and Sloss are violent
13  prison guards from all the cell extraction video
14  tapes he reviewed, verbal complaints from
15  prisoners during ICC hearing and second level 602
16  appeals Defendant Marshall must sign alleging
17  (inappropriate) excessive use of force involving
18  Defendants Beer, Morales, and Sloss who had the
19  authority to discipline and/or recommend that
20  Defendants Beer, Morales, and Sloss be disciplined
21  but chose to condone their egregious (misconduct)
22  behavior by doing absolutely nothing.

23  i-1. Defendants Buckley, Castillo, and Streeter as
24  appeals coordinators were aware from all the 602
25  appeals including second level disciplinary
26  appeals that they must respond to that Defendants
27  Beer, Morales, and Sloss are violent prison guards
28  that has viciously beaten and seriously injured

7

numerous prisoners for which each had the
authority to discipline or recommend discipline
against Defendants Beer, Morales, and Sloss but
chose to condone their egregious malfeasance by
doing absolutely nothing.

j-1. Defendants Keener and Dill authorized Defendant
Beer to assemble a cell extraction team who after
introducing themselves on video camera (falsified
official state documents as peace officers Cal.
Penal Code § 118.1) gave knowingly false
statements to justify having Plaintiff cell
extracted that Plaintiff had previously gassed
staff with fecal matter and urine the day before
as their reason for extracting and moving
Plaintiff to a cell with a modified or extended
food port (See cell extraction video tape #___)[4].

k-1. Defendants arranged for Psyche Tech Hance to
conduct clinical intervention to persuade
Plaintiff to exit the cell voluntarily oppose to
having to cell extract Plaintiff.

l-1. Plaintiff informed Psyche Tech Hance that he had
absolutely no intention to cell extract or to be
cell extracted for which Plaintiff on his own
volition requested that a video camera be used to
facilitate and to protect Plaintiff from

_____

[4] Cell extraction video tape number was blank in Plaintiff's
Separate Pretrial Statement.  (Doc. 189, Plntf. Pretrial Stmt.,
p. 3, ¶ 11.)

8

1  Defendants Beer, Morales, and Sloss chicanery to
2  inflict pain and to injure Plaintiff if he exited
3  the cell without the video camera.
4  m-1. Psyche Tech Hance failed to covey Plaintiff's
5  intention to exit the cell voluntarily.
6  n-1. At approximately 12:50 p.m., Defendants Beer,
7  Keener, Dill, Morales, and Sloss approached
8  Plaintiff's cell wearing extraction gear.
9  o-1. After reading the admonishment, Defendant Keener
10  asked if Plaintiff was willing to cuff up and exit
11  the cell voluntarily for which Plaintiff said yes.
12  p-1. Plaintiff attempted to (place his hands and arms
13  through the cuff/food port slot) cuff up to exit
14  the cell voluntarily, but Defendant Keener refused
15  to allow Plaintiff to exit the cell voluntarily
16  because Defendants wanted to enter the cell in
17  order to inflict pain and to injure Plaintiff as
18  punishment in retaliation for Plaintiff filing
19  Appeal No. CSP-C-5-01-3399, CSP-C-5-01-1587, and
20  CSP-C-01-1629 against Defendants Beer, Dill, and
21  Keener.
22  q-1. CDCR prison officials (Defendants) cannot force a
23  prisoner into cell extracting when he had
24  absolutely no desire or intention to cell extract,
25  nor can prison officials humiliate a prisoner in
26  any manner.
27  r-1. Defendant Keener stated that Plaintiff's only
28  option was to strip out totally nude then lie down

9

1    on the ground but either way Plaintiff would be
2    cell extracted.

3  s-1. Plaintiff asked but received no answer from
4    Defendant Keener as to why Plaintiff had to get
5    totally naked and lay down on the ground oppose to
6    simply allowing to cuff up at the cuff port and
7    exit the cell voluntarily.

8  t-1. The video tape of the October 23, 2001, cell
9    extraction will prove that before Plaintiff could
10   comply with Defendant Keener's order he had
11   Plaintiff's cell door opened to allow Defendants
12   Beer, Morales, and Sloss to enter the cell to
13   stomp, kick, punch Plaintiff in the face, head,
14   ribs, back, and shoulders in addition to using the
15   sharp ridges of the hand cuffs and leg restraints
16   as a weapon to cause deep cuts in Plaintiff's left
17   ankle and wrist.

18 v-1. Plaintiff did not resist defendants Morales and
19   Sloss' efforts to place Plaintiff in hand cuffs
20   and in leg restraints or else why would Plaintiff
21   lay down on the ground.

22 w-1. The October 23, 2001 cell extraction video tape
23   will prove that Defendant Beer damaged Plaintiff's
24   television set when he without provocation
25   (hopped) jumped up and onto the bunk and onto
26   Plaintiff's television cord (damaging) breaking
27   the two metal prongs on the end of the cord in
28   retaliation for filing Appeal No. CSP-C-5-01-3399.

x-1. After Defendants had plaintiff beaten up, they
placed Plaintiff in full mechanical restraints and
then on a litter and carried Plaintiff to an
outside grassy area in front of IV-A2L building.

y-1. While outside in the grassy area, Defendants
Keener ordered Plaintiff's only protection the
video (tape) camera turned off and to stop filming
to allow Defendants Beer, Morales, and Sloss to
use unnecessary excessive force.

z-1. As soon as the video camera was turned off
Plaintiff was dragged all over the yard then
beaten and sexually (sodomized) assaulted by
Defendants Beer, Morales, and Sloss by ramming a
PR-24 side baton weapon into Plaintiff's anus.

a-2. Defendant Dill ignored Plaintiff's pleas to help
Plaintiff or stop Defendants Beer, Morales, and
Sloss's attack.

b-2. An (M.T.A.) Raymer bandaged Plaintiff's injured
ankle and wrist as Plaintiff was being dragged
about the grassy area being attacked and
sodomized.

c-2. Defendants had no intentions on moving Glass to
another cell that was more secured (only to
inflict pain and injuries) but placed Plaintiff in
a holding cage in a hallway between 4A2L and 4A2K
buildings.

d-2. After Plaintiff was placed in the hallway cage,
Defendant Beer entered and began bragging and

11

boasting how he stomped and kicked Plaintiff in the face and intentionally jumped up on the bunk and onto Plaintiff's television set cord to cause it to be damaged and to knock the television off the bunk and onto the floor who also threatened to enter the holding cage and beat up Plaintiff again.

e-2. Approximately ten minutes a Sergeant K. Davis and a unknown middle-aged white male Sergeant entered the holding cage area to conduct an excessive force video and tape interview with Plaintiff due to Plaintiff alleging that Defendants used excessive force and sexually assaulting Plaintiff.

f-2. Plaintiff unwrapped the bandages to reveal on video tape how serious the injuries were to his ankle and wrist.

g-2. Plaintiff also pulled down his boxer shorts and revealed on video tape blood coming rom Plaintiff's anus and blood stains on the inside of Plaintiff's boxer sorts.

h-2. At approximately 3:00 p.m., Plaintiff was escorted to the Active Care Hospital (hereinafter "ACH") with a spit hood on to (cover up) mask Plaintiff's black eye and swollen facial injuries.

i-2. Defendants Beer and Keener ordered Dr. Meis, the ACH emergency room doctor, not to examine Plaintiff's eye or anal area or document that Plaintiff had injuries to his face and anal areas.

1        j-2. On October 24, 2001, at about 9:30 p.m., Sergeant

2             SC[5] and Sergeant K. Davis arrived at the ACH to

3             conduct a second excessive force video tape

4             interview regarding the October 23, 2001 excessive

5             use of force and sexual assault allegations.

6        k-2. Sergeants D. Scaife and K. Davis informed

7             Plaintiff that the first video tape depicting

8             Plaintiff's anal injuries (allegedly)

9             malfunctioned then destroyed by Defendants Beer,

10            Keener, and Dill.

11       l-2. While at the ACH, Plaintiff's left ankle became

12           infected from the deep cut caused by Defendants'

13           excessive use of force on October 23, 2001.

14      m-2. On November 2, 2001, Defendant Keener informed

15           Plaintiff that he was on strip cell status from

16           November 2, 2001 through November 12, 2001 as

17           punishment for Plaintiff's filing Appeal No, CSP-

18           C-5-01-1629 even though Plaintiff already

19           completed ten day strip cell status on November 2,

20           2001.

21      n-2. On November 9, 2001, Plaintiff was issued a CDC-

22           1083 property inventory sheet dated November 28,

23           2001 signed by Defendant Butts that was knowingly

24           false that Plaintiff refused to sign.

25

---

26       [5] It appears that Plaintiff may have intended to write
27 "Scaife," however, his pretrial statement only uses the letters
"SC" to name this sergeant.  (Doc. 189, Plntf, Pretrial Stmt.,
28 p.5, ¶ 37.)

o-2.   This CDC-1083 property inventory sheet signed and
dated by November 28, 2001 by Defendant Butts
indicating that the two metal prongs on the end of
Plaintiff's television cord were torn off.

p-2.   Defendants Beer, Butts, Keener, and Dill were the
last to have possession, custody, and control of
Plaintiff's television set and hearing aids on
October 23, 2001 before Defendants contend that
Plaintiff's television set was damaged and his
hearing aids were (missing) destroyed.

q-2.   Defendants Adkison and Gonzales first contend that
Plaintiff caused his own television set to be
damaged and hearing aids to be disposed of because
Plaintiff chose to cell extract.

r-2.   Defendants Adkison and Gonzales then altered
(official state documents as peace officers) CDC-
1083 property sheet dated November 28, 2001 after
Plaintiff proved that Defendant Butts knowingly
falsified CDC-1083 property sheet who never
provided Plaintiff with any opportunity to sign
the property inventory sheet on October 28, 2001.

s-2.   On November 4, 2001, Plaintiff filed Appeal No.
CSP-C-5-01-3530 asserting that Defendants Beer,
Keener, Dill, Morales, and Sloss used unnecessary
excessive force and sexually assaulted Plaintiff
with a PR-24 side baton weapon by ramming it up
Plaintiff's anus as punishment in retaliation for
Plaintiff filing Appeal No CSP-C-5-01-3399 against

14

1    Defendant Beer.

2    t-2. During ICC on November 12, 2001, Plaintiff
3         informed Defendant Marshall that Defendants Beer,
4         Keener, Dill, Sloss, and Morales used excessive
5         force and sodomized Plaintiff and that Defendants
6         Beer, Butts, and Keener stole Plaintiff's hearing
7         aids and intentionally damaged Plaintiff's
8         television set in retaliation for Plaintiff filing
9         602 appeals against them.

10   u-2. Defendant Marshall assured Plaintiff that his
11        television set would be repaired or Plaintiff
12        would be reimbursed because prisoners in CSP-Cor
13        SHU do not have access to their television cord
14        plug once the television cord is placed (into)
15        through the wall and locked into the television
16        cord plug lock in addition to ordering an
17        investigation into Defendants' excessive use of
18        force and sodomy on October 23, 2001.

19   v-2. Defendant Marshall also instructed Plaintiff to
20        file a 602 appeal and to hand it to CCII D. Means
21        to investigate if indeed Plaintiff's television
22        set was plugged into the television cord security
23        lock plate inside the pipe chase after Plaintiff
24        was cell extracted and admitted to the ACH on
25        October 23, 2001.

26   w-2. Defendants Adkison and Gonzales threatened to
27        destroy and/or donate Plaintiff's television and
28        that Plaintiff's only option was to mail it away

15

1    from the prison.

2    x-2. Plaintiff gave CCII D. Means a 602 Appeal

3        regarding Plaintiff's damages on November 12, 2001

4        as instructed by Defendant Marshall.

5    y-2. On November 9. 2001, Plaintiff sent a 602 appeal

6        to Appeals Coordinators Defendants Buckley,

7        Castillo, and Streeter alleging that Defendants

8        Beer and Butts intentionally damaged Plaintiff's

9        television set and stole Plaintiff's hearing aids

10       in retaliation for filing prison grievances

11       against them.

12   z-2. Defendants Buckley, Castillo, and Streeter refused

13       to log, process, or respond to appeal dated

14       November 9, 2001, but withheld[6] this appeal for

15       several months and then contend that it was a

16       previous appeal that Plaintiff filed before this

17       appeal that had already been responded to.

18   a-3. On November 20, 2001, Plaintiff filed Appeal No.

19       04A-01-12-008 requesting that Defendant T. Lloren

20       remove old photo copying charges from Plaintiff's

21       trust account forthwith.

22   b-3. On December 24, 2001, Defendant Lloren granted

23       Plaintiff's request on Appeal No. 04A-01-12-008,

24

25   _____

26       [6] Plaintiff's phrase "conspired with Defendants Adkison and
     Gonzales to" was deleted from this statement of fact as there are
27   no cognizable conspiracy claims in this action.  (Doc. 189,
     Plntf. Pretrial Stmt., p. 7, ¶ 53; Doc. 18, Screen. F&R; Doc. 20,
28   O. Adopt.)

                              16

1          however in retaliation for filing this appeal,
2          Defendant Lloren put a total freeze on Plaintiff's
3          trust account unless Plaintiff paid $5.85 twice,
4          and on the same day Plaintiff received funds on
5          his account from family to mail out and repair his
6          television.

7     c-3. Before filing Appeal No. 04A-01-12-008, and
8          Defendant Lloren freezing Plaintiff's trust
9          account in retaliation, Defendant Lloren processed
10         all CDC-182 canteen draw orders and CDC-193 trust
11         account withdrawal orders without Plaintiff's
12         trust account being frozen unless Plaintiff paid
13         the $5.85 twice.

14    d-3. On December 5, 2001, Plaintiff sent Defendants
15         Adkison and Gonzales two separate property
16         appeals, one in which to have Plaintiff's damaged
17         television repaired and the other to hold
18         Plaintiff's television for 90 days pending the
19         resolution of any and all property appeals
20         regarding Plaintiff's damaged television.

21    e-3. Defendants Dill, Keener, and Beer as 4A facility
22         administrators and Defendants Adkison and Gonzales
23         as 4A property officers were unlawfully flagging
24         all of Plaintiff's incoming and outgoing personal
25         mail for the sole purpose to misappropriate
26         Plaintiff's annual package.

27    f-3. On or about January 10, 2002, an insured annual
28         package arrived at (CSP-Cor) for Plaintiff from

17

1
2
3

his (family) sisters, Mrs. Dorris L. Davis and
Mrs. Michelle Franklin with a package label
affixed to the outside of the box.

4
5
6
7
8
9
10

g-3. Defendants arranged for Sergeant Rangel the
receiving and release ("R&R") sergeant to open
Plaintiff's annual package (without Plaintiff's
knowledge that a package had arrived for him) then
returned it to Plaintiff's family in violation of
CDCR and CSP-Cor policy and procedure oppose to
issuing it to Plaintiff.

11
12
13
14
15
16
17
18
19

h-3. Sergeant Rangel gave Mrs. Davis knowingly false
and erroneous instructions to (mail) send the
package back to CSP-Cor without another package
address label affixed to the outside of the box,
or to reinsure it again, but to address it in care
of a (C/O) Smith a fictitious (R&R) staff to
harass and frustrate Mrs. Davis after she called
the institution to inquire why the package was
returned to her.

20
21
22
23

i-3. After Mrs. Davis followed (R&R) Sgt. Rangel's
instructions he delivered it to Defendants Adkison
and Gonzales and instructed them to deem it as
(contraband) unauthorized.

24
25
26
27
28

j-3. On February 1, 2002, Defendants Adkison and
Gonzales sent Plaintiff a CDC-128-B-chrono stating
that an unauthorized annual package arrived at
CSP-Cor for Plaintiff without a package address
label for affixed to the outside of the box and in

18

1    care of a (C/O) Smith.

2    k-3. As with Plaintiff's damaged television set,
3         Defendants Adkison and Gonzales stated that
4         Plaintiff's only option was to mail his annual
5         package (away from the prison) home.

6    l-3. Plaintiff submitted numerous CDC-193 trust account
7         withdrawal orders requesting Defendants Lloren,
8         Adkison, and Gonzales to remove appropriate funds
9         from Plaintiff's account to allow Plaintiff to
10        mail out his television set and annual package.

11   m-3. Defendant Lloren informed Plaintiff again that his
12        trust account was frozen until Plaintiff paid
13        $5.85 twice for Plaintiff's allegedly damaging a
14        state sheet and T-shirt.

15   n-3. From December 24, 2001 through February 26, 2002,
16        Plaintiff received a total of $120.00 to mail out
17        his television set and annual package.

18   o-3. Defendant Lloren knowingly mismanaged Plaintiff's
19        trust account by refusing to allow Plaintiff to
20        use his funds (for any reason) to mail out his
21        damaged television set and annual package.

22   p-3. Plaintiff has filed numerous 602 appeals as to all
23        the claims against Defendants in this federal
24        lawsuit.

25   q-3. Exhaustion of administrative remedies have been
26        waived by Defendants in this action.

27   r-3. What prompted Defendants to decide to cell extra
28        extract Plaintiff and to use unnecessary and

19

1    unprovoked excessive force and to sexually assault
2    Plaintiff on October 23, 2001 as punishment and in
3    retaliation for Plaintiff filing Appeal No. CSP-C-
4    5-01-3399 against Defendant Beer for an incident
5    that occurred on October 22, 2001, the morning
6    before when Defendant Beer threatened to beat up
7    Plaintiff in addition to him spreading rumors that
8    were knowingly false that Plaintiff is a snitch
9    and has HIV-AIDS.  However Defendants make several
10   knowingly false statements on the October 23, 2001
11   cell extraction video tape that they contend were
12   the reasons for having Plaintiff cell extracted
13   that (1.)  Plaintiff (threw feces) gassed (guards)
14   staff the other day, (2.) Plaintiff was in
15   possession of a cup of fecal matter and threatened
16   to gas staff again, and (3.)Plaintiff was refusing
17   to be moved to a modified cell with an extended
18   food port.

19 s-3. Defendants as prison officials are their own
20      police who "can and do say" anything they want in
21      their reports or on video tape for cell extracting
22      (a prisoner) Plaintiff, or as to their reasons for
23      using unprovoked and unjustified excessive force
24      to injure and sodomize Plaintiff in order to
25      justify the retaliatory and gratuitous beating on
26      October 23, 2001.

27 t-3. Defendants dispute that they were motivated by
28      retaliation for Plaintiff filing Appeal No. CSP-C-

1   5-01-3399, CSP-C-5-01-1587, and CSP-C-5-01-1638
2   against Defendants Beer, Keener, and Dill
3   respectively in order to beat up Plaintiff and
4   sodomize him when they assembled an extraction
5   team to have Plaintiff cell extracted on October
6   23, 2001.
7   u-3. Defendants failed to follow (CDCR) and (CSP-Cor)
8   cell extraction policies and procedures before
9   opening Plaintiff's cell door and endangering
10  Plaintiff's life and seriously injuring him.
11  v-3. Defendant Keener had absolutely no intention of
12  allowing Plaintiff (adequate time) to cuff up and
13  exit the cell voluntarily because defendants only
14  intentions were cell extract and seriously injure
15  Plaintiff.
16  w-3. Defendants Dill, Keener, Beer, Morales, and Sloss
17  as prison officials cannot force or compel
18  Plaintiff or any prisoner into cell extracting by
19  giving Plaintiff unlawful orders to disrobe and
20  then lay on the ground on his stomach oppose to
21  simply allowing Plaintiff to cuff up at the food
22  port and exit the cell voluntarily and (CDCR) and
23  CSP-Cor) policy.
24  x-3. There is a dispute whether the first excessive
25  force interview video tape film depicting
26  Plaintiff's anal injury on October 23, 2001
27  actually malfunctioned or
28  intentionally/deliberately destroyed by Defendants

21

1       Dill, Keener, and Beer or liable for destruction

2       of evidence in a federal lawsuit.

3   y-3. There is a dispute whether Defendants Dill,

4       Marshall, Keener, and Beer deliberately (caused

5       the destruction) destroyed evidence in a federal

6       lawsuit; the third excessive force interview video

7       tape filmed on December 28, 2001.

8   z-3. There is a dispute whether or not a prisoner on 4A

9       facility has access to the end of their television

10      set cord (any time they want) on their own after

11      the television cord and plug-is inserted through

12      the hole in the wall then locked into a security

13      plate.

14  a-4. A dispute exists as to whether Plaintiff's

15      (television set and hearing aids) property

16      remained in cell 4A2L-44 from October 23, 2001

17      through October 28, 2001, or did Defendants Beer,

18      Butts , Keener , and Dill remove Plaintiff's

19      property from the cell and leave it unsecured in

20      4A2L-Rotunda hallway for five days.

21  b-4. There is a dispute whether Defendant Butts gave

22      Plaintiff an opportunity to sign or refuse to sign

23      the CDC-1083 property inventory sheet dated

24      October 28, 2001, or did Defendant Butts knowingly

25      falsify official documents as a peace officer;

26      CDC-1083-property inventory sheet when he wrote on

27      the sheet that Plaintiff refused to sign this

28      sheet.

22

c-4. Defendant Keener disputes that he signed a
CDC-128-B-chrono dated November 2, 2001, placing
Plaintiff on strip cell status from November 2,
2001 through November 12, 2001 for ten days even
though Plaintiff already served ten days strip
cell.

d-4. Defendant T. Lloren disputes that she placed a
hold of $5.85 twice on Plaintiff trust account
2001 for Plaintiff allegedly damaging a sheet and
a tee-shirt.

e-4. Defendant T. Lloren disputes that she froze
Plaintiff's trust account to prevent Plaintiff
from using his funds to mail out his television
set for repair.

f-4. Defendant Lloren disputes that she froze
Plaintiff's trust account to prevent Plaintiff
from using his funds for any reason but, process
trust withdrawal orders allowing CSP-Cor, CDCR,
and other officials to use Plaintiff's funds in
his account.

g-4. Defendant Lloren disputes that she mismanaged
Plaintiff's trust account and froze it in
retaliation for Plaintiff filing Appeal No. 04A-
01-12-008.

h-4. Defendants Adkison, Gonzales, and Lloren dispute
that they refused to process any and all of the
CDC-193 trust account withdrawal orders Plaintiff
submitted from December 29, 2001 through March 1,

1    2002 to pay the $5.85 double charge hold and allow

2    Plaintiff to pay to mail out his television and

3    now annual package until it was too late to do so.

4    i-4. Plaintiff disputes that he had to pay $5.85

5    (twice) or any amount of money first for a damaged

6    state property hold (extortion) before Defendant

7    Lloren would process CDC-193 trust account

8    withdrawal orders to allow Plaintiff to use his

9    funds to mail out his television for repair and

10   annual package home.

11   j-4. Defendants Dill, Keener, Beer, Adkison, and

12   Gonzales dispute that Plaintiff's annual package

13   arrived at CSP-Cor twice and that it was opened up

14   the first time by Sergeant Rangel in early January

15   2002 and mailed back to Plaintiff's family on its

16   own postage to harass Plaintiff's family and as

17   punishment in retaliation for Plaintiff filing

18   numerous prison grievances against Defendants.

19   k-4. Defendants dispute that they, or any other (CSP-

20   Cor) official gave Plaintiff's sister Mrs. Dorris

21   L. Davis knowingly false and erroneous instruction

22   how to go about returning Plaintiff's annual

23   package to (CSP-Cor)after it was properly mailed

24   to CSP-Cor in January 2002 then opened and

25   returned to Plaintiff's family.

26   l-4. Defendants dispute that they had a duty (under

27   federal law) to notify Plaintiff that federal mail

28   package had arrived for him at (CSP-Cor) before

24

1    opening it up and mailing it back to Plaintiff's
2    family.

3    m-4. Defendants Adkison and Gonzales dispute that they
4         were tampering with Plaintiff's out-going federal
5         mail and in possession of a letter Plaintiff
6         mailed to his sister Mrs. Dorris Linda Davis.

7    n-4. Defendants Adkison, Butts, and Gonzales dispute
8         that they could have early repaired Plaintiff's
9         television.

10   o-4. Defendants Dill, Marshall, Butts, Beer, and Keener
11        dispute that they had to replace Plaintiff's
12        hearing aids.

13   p-4. Defendants dispute that there exists a custom or
14        policy of retaliatory acts at CSP-Cor against
15        Plaintiff for filing 602 prisoner grievances and
16        federal lawsuits against (CDCR) CSP-Cor officials.

17   2.   Defendants'

18   a.   Whether it was necessary to remove Plaintiff from
19        his cell on October 23, 2001, because he had
20        accumulated feces in his cell and threatened to
21        throw it on staff.

22   b.   Whether Plaintiff refused a direct order to remove
23        his clothing for the purpose of being searched.

24   c.   Whether Plaintiff refused orders to submit to
25        handcuffs.

26   d.   Whether it was appropriate for Defendants to order
27        Plaintiff to get down on the floor before they
28        entered the cell.

25

e.   Whether Plaintiff was naked when he was ordered to
     get down in the floor.

f.   Whether any of the Defendants used excessive force
     when Plaintiff was removed from his cell.

g.   Whether any of the Defendants used excessive force
     after Plaintiff was taken out to the prison yard.

h.   Whether Plaintiff was sexually assaulted.

i.   Whether Plaintiff incurred more than a de-minimus
     injury.

j.   Whether the cell extraction was done for the
     purpose of retaliating against Plaintiff.

k.   Whether any of Plaintiff's property was taken or
     damaged for the purpose of retaliating against
     him.

l.   Whether Plaintiff was prescribed hearing aids, and
     if so, were they his personal property, or the
     property of the prison.

m.   Whether a hold was placed on Plaintiff's trust
     account for the purpose of retaliating against
     him.

n.   Whether an incoming package was rejected for the
     purpose of retaliating against Plaintiff.

o.   Whether Plaintiff was found guilty of a
     disciplinary infraction and assessed a determinate
     term of confinement in a Security Housing Unit for
     the purpose of retaliating against him.

p.   Whether Defendant Beer told other inmates that
     Plaintiff was a child molester and had AIDS for

26

1          the purpose of retaliating against him.

2     q.   Whether Plaintiff has a prior arrest for lewd and

3          lascivious conduct with a minor child, and a

4          conviction for sexual battery.

5     r.   Whether Defendant Beer placed Plaintiff in a

6          holding cell for the purpose of retaliating

7          against him.

8               IV.   DISPUTED EVIDENTIARY ISSUES

9     1.   <u>Plaintiff's</u>

10         Pursuant to the Federal Rules of Evidence, Plaintiff

11    respectfully objects to the admissibility of any and/or all

12    references to the following:

13    a.   Plaintiff's criminal (convictions) history prior

14         or past;

15    b.   Plaintiff's prior CDC Rules Violation Reports

16         (RVR) or Rule Infractions allegedly committed

17         while in custody of the CDCR both before and after

18         October 223, 2001;

19    c.   Plaintiff's incarcerated witnesses' criminal

20         convictions or history;

21    d.   Plaintiff's incarcerated witnesses' disciplinary

22         record and/or any criminal convictions or

23         misconduct during their incarceration;

24         Plaintiff bases his dispute as to the above evidentiary

25    issues on the basis that the record is already established which

26    reflects Plaintiff is a prison litigant and that Plaintiff and

27    his witnesses are incarcerated under the jurisdiction of CDCR,

28    and any such reference would only serve to prejudice the jury

27

1  against Plaintiff and his witnesses at trial.[7]

2      Plaintiff further raises evidentiary issues as to:

3          e.   the foundation as to the whereabouts of two (2)

4               excessive force interview video tapes

5               filmed/conducted by Sergeant K. Davis on October

6               23, 2001 at approximately 2:00 p.m.;

7          f.   the foundation for Defendants to stipulate and/or

8               concede that they destroyed or caused to be

9               destroyed the October 23, 2001 excessive force

10              interview videotape because it depicted that

11              Plaintiff had blood coming from his anus, blood

12              inside his boxer shorts, deep cuts in Plaintiff's

13              left ankle and wrist, and was in sever pain;

14         g.   the personal files of Defendants Beer and Morales

15              containing or pertaining to any and all Internal

16              Affairs ("I/A") reports only that Defendants Beer

17              and Morales are violent prison officials and that

18              Defendants Marshall, Dill, V. Castillo, Buckley,

19              Streeter, and Keener were aware that Defendants

20              Beer and Morales were beating up or had beaten up

21              an untold number of prisoners and that they were

22              violent prison officials;

23         h.   the admissibility of testimony of Plaintiff's

24  _____

25      [7] Plaintiff repeats some of his arguments raised in his
    motions for attendance of incarcerated witnesses that were
26  addressed in the order issued thereon, and which are not
    addressed herein as they are not appropriately repeated and/or
27  entertained in a final pretrial order.  (Doc. 189, Plntf.
    Pretrial Stmt., 11:6-19; Doc. 205, O on Incarc. Wit.)
28

                              28

1          purported experts – Plaintiff intends to call
2          Michael Mayda and Doctor Johnson to testify as
3          expert witnesses.

4     2.   Defendants'

5     Defendants offer that the following evidentiary disputes can
6 be addressed in motions in limine, or can be raised at trial at
7 the time Plaintiff seeks to admit the evidence or exhibit:

8          a.   Whether Plaintiff's criminal history is admissible
9               for any purpose.

10         b.   Whether Plaintiff's extensive disciplinary history
11              is admissible for any purpose.

12         c.   Whether the criminal history of incarnated
13              witnesses is admissible for any purpose.

14         d.   Whether the disciplinary history of incarcerated
15              witness is admissible for any purpose.

16         e.   Whether Defendants' personnel records are
17              admissible for any purpose.

18         f.   Whether copies of regulations, manuals or
19              operational procedures of the Department of
20              Corrections and Rehabilitation and Corcoran State
21              prison are admissible exhibits.

22         g.   Whether copies of appeals filed by Plaintiff's
23              inmate witnesses are admissible for any purpose.

24         h.   Whether Defendants' discovery responses are
25              admissible for any purpose other than impeachment.

26         i.   Whether any of Plaintiff's administrative appeals
27              are admissible for any purpose other than
28              impeachment.

29

1          j.    Whether Plaintiff's proposed witnesses can offer
2                their opinion of the character of the Defendants.

3          k.    Whether evidence of accusations of prior bad acts
4                by the Defendants is admissible for any purpose.

5          l.    Whether the use of Plaintiff's deposition should
6                be limited to impeachment only.

7          m.    Whether the operative complaint in this case is
8                hearsay and inadmissible.

9          n.    Whether Plaintiff can offer testimony that
10               Defendants deliberately destroyed video tapes.

11         o.    Whether the declarations of other inmates are
12               admissible for any purpose.

13                    V.   SPECIAL FACTUAL INFORMATION

14     Local Rule 281, based on Fed. R. Civ. P. 16, requires

15 parties to state special factual information in certain actions –

16 none of which are raised in this case.

17                       VI.   RELIEF SOUGHT

18     Plaintiff seeks declaratory and injunctive relief, monetary

19 damages (both compensatory and punitive), and costs of suit.

20 Defendants seek dismissal and costs of suit.

21                   VII.   DISPUTED ISSUES OF LAW

22 A.   Plaintiff's

23     Plaintiff contends that his injuries are more than

24 sufficient to garner constitutional recognition.  Plaintiff's

25 injuries consist of bleeding, bruising, as sever pain in

26 Plaintiff's rectal/rectum area after Defendants used a foreign

27 object: APR-24 to sexually assault and sodomize Plaintiff; a

28 black left eye, deep cuts to Plaintiff's left ankle (which became

                              30

1  infected) and right wrist, pain and swelling to Plaintiff's face,
2  head, back, neck, ribs and shoulders from being stomped and
3  kicked in violation of the cruel and unusual punishment clause of
4  the Eight Amendment.

5       In addition, Plaintiff's First and Fourteenth Amendment
6  rights were violated sufficiently to garner constitutional
7  recognition as to the Defendants beating up and sodomizing him
8  with a foreign object which amount to punishment without due
9  process.  The intentional destruction of Plaintiff's television
10 and hearing aids, the freezing and intentional mismanagement of
11 Plaintiff's prison trust account to prevent Plaintiff from
12 mailing out his television and annual package resulting in
13 (other) Defendants misappropriating them, filing a disciplinary
14 report that was knowingly false resulting in Plaintiff being
15 assessed an eighteen month SHU term.  The Defendants did these
16 acts as punishment and in retaliation for Plaintiff exercising
17 his First and Fourteenth Amendment rights to petition the court
18 and federal government through (the prison) grievances.

19      Wherefore, Plaintiff has sustained irreparable physical,
20 mental, and emotional injuries to his First, Eighth, and
21 Fourteenth Amendment rights for which such injuries are
22 "repugnant to the conscious of mankind."  *See Hudson v.*
23 *McMillian*, 503 U.S. 1, 7-8, 10 (1992); *see also United States v.*
24 *Lanier*, 520 U.S. 259 (1997); *Mt. Healthy City School Dist. Bd. of*
25 *Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

26      1.  Excessive Force
27      The use of excessive force by prison officials violates the
28 Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1 (1992).  In

excessive force cases, "the core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (*quoting Whitley v. Albers*, 475 U.S. 274, 287 (1997).

The law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain. *Whitley*, 475 U.S. at 320-21.

To determine whether the use of force violates the Eight Amendment, the court should consider the "extent of injury . . . the need for application of force, the relationship between the need and the amount of force used, the threat 'reasonably perceived by the responsible officials and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 1 (*quoting Whitley*, 475 U.S. at 321). *See also Lemaire v. Maass*, 12 F.3d at 1454, *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

2.   Sexual Assault-Sodomy

A sexual assault on an inmate by a guard . . . regardless of the gender of the guard or the prisoner . . . is deeply "offensive to human dignity." *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) (*quoting Hudson*, 503 U.S. at 9. Being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1991).

Where guards themselves are responsible for the rape and sexual abuse/sodomy of inmates, qualified immunity offer no

32

1   shield.   *Schwenk*, 204 F.3d at 1197 (*quoting Mathie v. Fries*, 935
2   F.Supp. 1284, 1301 (E.D. N.Y. 1996); *see also Women Prisoners of*
3   *the Dist of Columbia Dept of Corrections v. District of Columbia*,
4   877 F.Supp. 634, 665 (D.D.C. 1994) ("rape, coerced sodomy,
5   unsolicited touching of women prisoners' vaginas, breasts, and
6   buttocks by prison employees are 'simply not part of the penalty
7   that criminal offenders pay for their offenses against
8   society'")*Farmer, id*.   As a result, in *Farmer* the Supreme Court
9   held that prison officials may be held liable under the Eight
10  Amendment for the rape of a transsexual inmate by another inmate
11  if the officials knew but disregarded that that inmate faced
12  substantial risk of serious harm.   *See United States v. Lanier*,
13  520 U.S. 259, 270 (1997); *see also Boddie v. Schnieder*, 105 F.3d
14  857 (2nd Cir. 1997) which established that sexual assault of a
15  prison inmate by a prison employee serves no legitimate punitive
16  purpose.   *Id*. at 861.

17          3.    Failure to Protect

18          Prison officials have a duty to take reasonable steps to
19  protect inmates from harm.   *Hoptowit v. Ray*, 682 F.2d 1237, 1250
20  (9th Cir. 1982).   The failure to protect an inmate from attacks
21  may give rise to a constitutional violation if prison officials
22  deliberately or recklessly disregard an inmates' safety.   *Berg v.*
23  *Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).   It has clearly
24  been established that prisoners have a right to (be) protection
25  while incarcerated.   *See Farmer v. Brennan*, 511 U.S. 825 (1994).
26  A prison official duty under the eighth amendment is to ensure
27  "reasonable safety."   *See also Helling v. McKinney*, 509 U.S. 25
28  (1993).

                                  33

1   To be liable for failing to protect an inmate, a prison
2   official must be aware of sufficient information about a
3   particular danger which, in turn gives rise to an affirmative
4   duty to protect the threatened inmate. *Berg*, 794 F.2d at 460. A
5   prisoner must also show a culpable state of mind on the part of
6   prison officials. *Farmer*, 511 U.S. at 838-39.

7       4.   Federal Retaliation

8   To establish a claim of retaliation under 42 U.S.C. § 1983 a
9   plaintiff must first establish that he engaged in
10  constitutionally protected activity and that his conduct was a
11  substantial or motivating factor behind the supposedly
12  retaliatory acts. *Mt. Healthy City school Dist. Bd. Of Edu.*
13  *Doyle*, 429 U.S. 274, 287 (1977); *see also Soranno's Gas-Co Inc.*
14  *V. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

15  Within the prison context, a claim of first amendment
16  retaliation entails the following five basic elements: (1) an
17  assertion that a state actor took some adverse action against an
18  inmate (2) because of (3) that prisoner's protected conduct, and
19  that such action (4) chilled the inmate's exercise of the first
20  amendment rights, and (5) the action did not reasonably advance a
21  legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559,
22  568 (9th Cir. 2005).

23  "Of fundamental import to prisoners are their first
24  amendment right[s] to file prison grievances," *Bruce v. Ylst*, 351
25  F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights
26  litigation in court" *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th
27  Cir. 1995). Without these bedrock constitutional guarantees,
28  inmates would be left with no viable mechanism to remedy prison

1  injustices, and because purely retaliatory actions taken against
2  a prisoner for having exercised those rights necessarily
3  undermine those protections, such actions violate the
4  constitution quite apart from any underlying misconduct they are
5  designed to shield.  *See e.g., Pratt v. Rowland*, 65 F.3d 802,
6  806, n.4 (9th Cir. 1995) ("[T]he prohibition against retaliatory
7  punishment is 'clearly established law' in the Ninth Circuit, for
8  qualified immunity purposes.")

9  B.  <u>Defendants</u>

10      Defendants state that Plaintiff brings this action under 42
11  U.S.C. § 1983, alleging Defendants violated his Eighth Amendment
12  rights and retaliated against him. Federal law governs this
13  action.

14      1.  Eighth Amendment Claims

15      The Eighth Amendment's Cruel and Unusual Punishment Clause
16  prohibits the "unnecessary and wanton infliction of pain" on
17  prison inmates.  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992);
18  *Estelle v. Gamble*, 429 U.S. at 102-03 (1976).  In cases involving
19  allegations of excessive use of force, "the core judicial
20  inquiry" is "whether force was applied in a good-faith effort to
21  maintain or restore discipline, or maliciously and sadistically
22  to cause harm."  *Hudson*, 503 U.S. at 5.  A use of force has both
23  subjective and objective components.  A court must consider
24  whether the prison official acted with a "sufficiently culpable
25  state of mind" and if the alleged wrongdoing was objectively
26  "harmful enough" to establish a constitutional violation.  *Id*.

27      In considering an excessive force claim, the court should
28  examine several factors, including: (1) the need for an

35

1  application of force; (2) the relationship between the need and

2  amount of force used; (3) the threat to the safety of staff and

3  other inmates; (4) any efforts made to temper the severity of a

4  forceful response; and (5) the extent of injury inflicted.

5  *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  With regard to the

6  last of these factors, while a plaintiff need not demonstrate a

7  significant injury to state a claim for excessive force under the

8  Eighth Amendment, "a claim ordinarily cannot be predicated on a

9  de minimus use of physical force." *Id.* at 320-21.  "The Eighth

10  Amendment's prohibition of cruel and unusual punishment

11  necessarily excludes from constitutional recognition de minimus

12  uses of physical force, provided that the use of force is not of

13  a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S.

14  at 9-10.  Moreover, wide-ranging deference is given to prison

15  administrators in the adoption and execution of the policies and

16  practices that in their judgment are considered necessary in the

17  preservation of the institution's security, order and discipline.

18  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  That deference

19  extends to prison security measures taken in response to an

20  actual confrontation, and to deterrent measures designed to

21  reduce incidents of prison disciplinary breaches.  *Whitley*, 475

22  U.S. at 322.  "It does not insulate from review actions taken in

23  bad faith and for no legitimate purpose, but it requires that

24  neither judge nor jury freely substitute their judgment for that

25  of officials who have made a considered choice."  *Id*.

26      In addition, California Code of Regulations, title 15,

27  section 3268, sets forth CDCR's policy governing use of force.

28  Under that policy, reasonable force is defined as "the force that

1  an objective, trained and competent correctional employee, faced
2  with similar facts and circumstances, would consider necessary
3  and reasonable to subdue an attacker, overcome resistance, effect
4  custody, or gain compliance with a lawful order."  Cal. Code
5  Regs. tit.15, § 3268(a)(1).  Moreover, excessive force is defined
6  as "the use of more force than is objectively reasonable to
7  accomplish a lawful purpose."  Cal. Code Regs. tit.15, §
8  3268(a)(3).

9       Defendants argue that Plaintiff cannot demonstrate that the
10  Defendants acted maliciously and sadistically when applying the
11  amount of force necessary to maintain safety, security, and order
12  in the face of the confrontation with Plaintiff.

13       2.   Retaliation

14       Within the prison context, a viable First Amendment
15  retaliation claim requires that Plaintiff establish the following
16  five elements: (1) that a state actor took some adverse action
17  against him (2) because of (3) Plaintiff's protected conduct, and
18  that such action (4) chilled Plaintiff's exercise of his First
19  Amendment rights; and (5) the action did not reasonably advance a
20  legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559,
21  568 (9th Cir. 2005).  Plaintiff bears the burden of setting forth
22  facts that satisfy each and every element necessary for a prima
23  facie case of retaliation. *Rhodes*, 408 F.3d at 568.  The
24  "chilling" inquiry for First Amendment purposes here is whether
25  an official's acts would chill or silence a person of ordinary
26  firmness from future First Amendment activities.  *Id*. at 568-69
27  (citing *Mendocino Environmental Center v. Mendocino County*, 192
28  F.3d 1283, 1300 (9th Cir. 1999)).  Defendants argue that

1  Plaintiff cannot establish that Defendants took action against
2  him because of his protected conduct.  Defendants further argue
3  that Plaintiff cannot demonstrate that Defendants' action did not
4  have a legitimate correctional goal.

5          3.   Causation

6          Liability under 42 U.S.C. § 1983 can be established by
7  showing that a defendant either personally participated in a
8  deprivation of the plaintiff's rights, or caused such deprivation
9  to occur.  *Arnold v. International Business Machines Corp.*, 637
10 F.2d 1350, 1355 (9th Cir. 1981).  Under 42 U.S.C. §1983, there
11 must be an actual connection or link between the actions of a
12 defendant and the deprivation alleged to have been suffered by
13 the plaintiff.  *See Monell v. Dep't of Social Services*, 436 U.S.
14 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  A person
15 "subjects" another to the deprivation of a constitutional right
16 within the meaning of the statute, if he does an affirmative act,
17 participates in another's affirmative acts, or fails to perform
18 an act which he is legally required to do that causes the claimed
19 deprivation.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988);
20 *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  The
21 Plaintiff must demonstrate that a particular defendant was the
22 "actual and proximate cause" of his injuries.  *Leer,* 844 F.2d at
23 633-34.

24         4.   Qualified Immunity

25         The defense of qualified immunity protects "government
26 officials . . . from liability for civil damages insofar as their
27 conduct does not violate clearly established statutory or
28 constitutional rights of which a reasonable person would have

1   known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

2   Qualified immunity protects "all but the plainly incompetent or

3   those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

4   335, 341 (1986).  Thus, the standard allows "ample room for

5   mistaken judgments by protecting all but the plainly incompetent

6   or those who knowingly violate the law," and applies even when

7   wrongful conduct occurs. *Richardson v. McKnight*, 521 U.S. 399,

8   403 (1997); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal

9   quotations omitted).

10       In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Court set

11   forth the required two-part analysis in ruling on qualified

12   immunity.  First, "[t]aken in the light most favorable to the

13   party asserting the injury, do the facts alleged show the

14   officer's conduct violated a constitutional right? . . .  If no

15   constitutional right would have been violated were the

16   allegations established, there is no necessity for further

17   inquiries concerning qualified immunity." *Id*.

18       If, on the other hand, a constitutional violation could be

19   made out, the court must determine whether the right was clearly

20   established.  *Id*.  "This inquiry, it is vital to note, must be

21   undertaken in light of the specific context of the case, not as a

22   broad general proposition; and it too serves to advance

23   understanding of the law and to allow officers to avoid the

24   burden of trial if qualified immunity is applicable." *Id.*  Thus,

25   in determining whether a right is clearly established, the court

26   must determine "whether it would be clear to a reasonable officer

27   that his conduct was unlawful in the situation he confronted."

28   *Id.* at 202 (*quoting Wilson v. Layne*, 526 U.S. 603, 615 (1999)

1   ("[T]he right allegedly violated must be defined at the

2   appropriate level of specificity before a court can determine if

3   it was clearly established").

4       The Supreme Court clarified the *Saucier* two-part analysis in

5   *Pearson v. Callahan*, 555 U.S. ____, 2009 U.S. LEXIS 591, *15

6   (U.S. Jan. 21, 2009), holding that the Court may exercise its

7   discretion in deciding which of the two prongs of the qualified

8   immunity analysis should be addressed first.  Therefore,

9   "regardless of whether the constitutional violation occurred the

10  [official] should prevail if the right asserted by the plaintiff

11  was not "'clearly established' or the [official] could have

12  reasonably believed that his particular conduct was lawful."

13  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991);

14  *Pearson*, 555 U.S. ____, 2009 U.S. LEXIS 591 at *15.  Defendants

15  argue that they are entitled to qualified immunity.  Defendants

16  will need to take the proper steps as required under the Federal

17  Rules of Civil Procedure to preserve any such entitlement.

18      5.   Impeachment by Evidence of Prior Felony Convictions

19      Defendants also argue that the verdict in this case will be

20  decided by the jury after consideration of each witness's

21  credibility.  Plaintiff, to meet his burden of proof at trial, is

22  expected to testify to his version of the events.  He has also

23  identified other inmates as witnesses for trial.

24      Rule 609 of the Federal Rules of Evidence provides that

25  evidence of a witness's prior felony conviction may be used to

26  impeach that witness's testimony.  Defendants contend that no one

27  who has a prior felony conviction is entitled to the false aura

28  of veracity, which would occur if impeachment of the Plaintiff

40

1  and his additional inmate witnesses were not allowed.  *U.S. v.*
2  *Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993) ("As any trial
3  lawyer knows, felony convictions trench heavily upon such a
4  person's credibility").  Accordingly, Defendants will seek to
5  impeach Plaintiff's trial testimony, with evidence of their prior
6  felony convictions.

7       6.   Punitive Damages

8       Defendants also argue that Plaintiff is not entitled to
9  punitive damages.  The Supreme Court has determined that punitive
10 damages are available in a section 1983 action only when the
11 defendant's conduct is shown to be motivated by evil motive or
12 intent or when it involves reckless or callous indifference to
13 the federally protected rights of others.  *Smith v. Wade*, 461
14 U.S. 30, 51 (1983).

15      It is not enough that defendants may have acted in an
16 objectively unreasonable manner; their subjective state of mind
17 must be assessed.  *Wulf v. City of Wichita*, 883 F.2d 842, 867
18 (10th Cir. 1989).  Where there is no evidence that a § 1983
19 defendant has acted with evil intent, there is no legal right to
20 punitive damages.  *Ward v. City of San Jose*, 967 F.2d 280, 286
21 (9th Cir. 1991).

22              VIII.   ABANDONED ISSUES

23 A.   Plaintiff

24      Although no issues have been intentionally abandoned by
25 either side, the issues initially framed by the pleadings have
26 been narrowed by the Court's December 14, 2004 findings and
27 recommendations recommending dismissal of Glass' Religious Land
28 Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. §

                          41

1  2000cc-1, First Amendment religious claims, Eighth Amendment
2  medical claims, and Fourteenth Amendment equal protection, due
3  process, and privileges and immunity claims against Defendants
4  Meis, Anderson, Rousseau, Yamit, and Raymer.[8]  (Doc. 18, Screen
5  F&R.)

6  **B.**   **Defendants**

7      Defendants represent that they have not abandoned any issues
8  or affirmative defenses which were raised in their answer.

9                        **IX.   WITNESSES**

10  **A.**   **Plaintiff**

11      1.   Incarcerated Witness Wittier Buchanan (K02554);

12      2.   Incarcerated Witness Jason Ortiz (P72425);

13      3.   Incarcerated Witness Robert S. Milton (J06653);

14      4.   Incarcerated Witness Rodney Fleming (E09596);

15      5.   Incarcerated Witness Eric Jackson (D47735);

16      6.   Incarcerated Witness James Thompson (C89908);

17      7.   Incarcerated Witness John Brown;

18      8.   Incarcerated Witness Lamont Rencher (D73399);

19      9.   Incarcerated Witness David W. Smith (K78326);

20      10.  Registered Nurse L.T. Koeppe;

21      11.  Correctional Sergeant D. B. Scaife;

22

23      [8] Plaintiff indicates that "in the event [he] is
24  unsuccessful at trial, [he intends] to re-allege his 'RLUIPA' and
    First Amendment religious claims against Defendants Adkison and
25  Gonzales and Eight Amendment medical claims against Defendants
    Meis and Raymer on appeal."  (Doc. 189, Plnt. Pretrial Stmt., p.
26  17.)  However, Plaintiff's religious claims under the RLUIPA and
    the First Amendment have already been found uncognizable and
27  dismissed from this action.  (Doc. 18, Screening F&R; Doc. 20,
    Order Adopting.)
28

                                42

1        12.   Correctional Sergeant V. Rangel; and

2        13.   Doris Linda Davis.

3        Plaintiff requests the right to reserve introducing

4   additional unincarcerated witnesses as may be deemed necessary or

5   appropriate at the time of trial, specifically Dr. Johnson. (Doc.

6   189, Plntf. Pretrial Stmt., p. 18.)   In his disputed evidentiary

7   issues Plaintiff states that he intends to call "Michael Mayda

8   and Doctor Johnson to testify as expert witnesses."   (*Id.* at

9   12:1-3.)

10       Plaintiff was notified in the Second Scheduling Order, filed

11  September 15, 2009, that if he desired to have the Marshall serve

12  any unincarcerated witnesses who refuse to testify voluntarily,

13  he must have notified the Court in writing of such witnesses'

14  name and location for the Court to calculate and notify Plaintiff

15  of the requisite sums to submit for witness fees in the form of a

16  money order.   This process must have been completed in time for

17  Plaintiff to submit money orders for witness fees to the Court on

18  or before January 12, 2010.   Plaintiff complied with these

19  requirements as to R.N. Koeppe, Sgt. Scaife, and Sgt. Rangel, but

20  he did not comply with those requirements as to either Dr.

21  Johnson or Michael Mayda.   Thus, Plaintiff may not call either

22  Dr. Johnson or Michael Mayda as a witness at the trial of this

23  matter unless Dr. Johnson and/or Michael Mayda has agreed to

24  testify voluntarily and will appear at trial without being

25  subpoenaed.

26       Plaintiff was also informed in the Second Scheduling Order,

27  filed September 15, 2009, of the procedures for calling

28  incarcerated witnesses.   Specifically, Plaintiff was informed

43

1   that in order to call incarcerated person as trial witnesses,

2   Plaintiff must serve and file with his pretrial statement a

3   written "Motion for Attendance of Incarcerated Witnesses."

4   Plaintiff filed six such motions.  In the order issued, March 3,

5   2010, Plaintiff's motion for attendance of incarcerated witness

6   Wittier Buchanan (K02554) was granted, and all others were

7   denied.  (Doc. 205, O Incarc. Wit.)

8       Plaintiff filed a request for reconsideration of the ruling

9   as to his motion for attendance of incarcerated witnesses which

10  was argued, submitted, and denied at the pretrial conference.

11  Defendants are to submit an order for review and issuance denying

12  Plaintiff's motion for reconsideration.

13  B.   <u>Defendants</u>

14      The following persons, whose address is California State

15  Prison – Corcoran, 4001 King Ave., Corcoran, CA 93212:

16      1.   J.A. Keener, Correctional Lieutenant;

17      2.   T. Banks, Correctional Officer;

18      3.   T. Hieng, Correctional Officer;

19      4.   M.K. Anderson, Correctional Officer;

20      5.   D. Davis, M.D.;

21      6.   K. Gooch, Correctional Officer;

22      7.   S. Hance, Psychiatric Technician;

23      8.   D. Key, Correctional Officer;

24      9.   M. Lui, M.D.;

25      10.  S. Meis, M.D.;

26      11.  R. Rayner, Medical Technician Assistant;

27      12.  R. Sloss, Correctional Officer;

28      13.  F. Yamat, Correctional Officer;

44

14.  R. Beer, Correctional Sergeant;

15.  T. Lloren, Office Assistant;

16.  J. Buckley, Correctional Counselor II;

17.  D. Scaife, Sergeant;

18.  K. Davis, Sergeant; and

19.  Custodians of Plaintiff's central file and medical
     records.

The following person whose address is: California Men's Colony, Highway 1, San Luis Obispo, CA 93409:

20. J. Marshall, Warden.

The following persons whose address is through counsel:

21. N. Dill, Facility Captain, retired.

22. B. Streeter, Correctional Counselor II, retired;

23. D. Morales, Correctional Officer, retired;

24. V. Castillo, Correctional Counselor II, retired; and

25. W. Butts, Correctional Officer, retired.

Counsel are each ordered to submit a list of witnesses to the court along with a copy for use by the Courtroom Deputy Clerk, on the same date and at the same time as the list of exhibits are to be submitted as ordered below.

<u>CAUTION</u>

Counsel are cautioned that expert witnesses, including percipient experts, must be designated as such.  No witness, not identified as a witness in this order, including "rebuttal" witnesses, will be sworn or permitted to testify at trial.

X.  EXHIBITS, SCHEDULES AND SUMMARIES

The following is a list of documents or other exhibits that the parties expect to offer at trial.

45

1    <u>CAUTION</u>

2        Only exhibits so listed will be permitted to be offered into

3    evidence at trial, except as may be otherwise provided in this

4    order.  No exhibit not designated in this pretrial order shall be

5    marked for identification or admitted into evidence at trial.

6    Because of the logistic circumstances of a case such as this, any

7    party may raise objections and/or address disputes with an

8    opposing party's exhibits prior to the start of trial on May 11,

9    2010.

10   A.   <u>Plaintiff's Exhibits</u>

11        1.   Glass' Medical files, the portions from 2001 through

12             2004.

13        2.   The October 23, 2001 cell extraction video tape film.

14        3.   The first excessive force interview video tape

15             conducted approximately forty-five (45) minutes after

16             the cell extraction, video tape was filmed on October

17             23, 2001.

18        4.   The second excessive force interview video tape

19             conducted by Sergeants Scaife and K. Davis on October

20             24, 2001 at the Acute Care Hospital.

21        5.   The third and fourth video tapes over all excessive

22             force interview video tape, conducted by Sergeants J.

23             Baston and Scaife on December 28, 2001.

24        6.   The portions of Glass' CDC-Appeals files from early

25             2001 through 2008.

26        7.   All CDC-7219 medical injury reports from October 23,

27             2001 through November 2, 2001.

28        8.   All CDC-837 incident reports Log No. CDR-04A-01-0545

signed and dated October 23, 2001 by Defendants Beer
and Keener respectively.

9.     Rules violation report CDC-115 Log No. 4A2-01-10-49
       written by Defendant Beer on November 23, 2001.

10.    Glass' blood stained boxer shorts as depicted on the
       first excessive force interview video tape that
       Defendants Beer and Keener removed from Glass at the
       ACH on October 23, 2001.

11.    CDC-7219 medical injury report and body sheet on Glass
       dated October 23, 2001.

12.    CDC-7219 medical injury report and body sheet on Glass
       dated July 22, 2001 signed by then M.T.A. Lt. Koeppe.

13.    CDC-7219 medical injury report and body sheet on
       Defendant Butts dated July 22, 2001.

14.    Rules violation report, CDC-115 Log No. 4A2-01-07-28
       written by Defendant Butts.

15.    All CDC-837 incident reports Log No. COR-04A-01-07-
       0380.

16.    All CDC-1083 personal property inventory sheets signed
       and dated by Defendant Butts on October 28, 2001, C/O
       Edmon on November 9, 2001, and altered CDC-1083 by
       Defendants Adkison and Gonzales on October 28, 2001.

17.    CDCR cell extraction policies and procedures.

18.    CSP-Cor cell extraction policies and procedures.

19.    C.C.R. Title 15 § 3004 rights and respect of others.

20.    C.C.R. Title 15 § 3084.160 right to appeal, no reprisal
       shall be taken.

21.    C.C.R. Title 15 § 3085 American's With Disabilities Act

47

("ADA") on Glass' appeals pursuant to 42 U.S.C. § 12101 - 12132 and the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a) & (b) regarding Glass' destroyed/stolen hearing aids.

22. C.C.R. Title 15 § 3286 use of force.

23. C.C.R. Title 15 § 3268.1 reporting and investigating the use of force.

24. C.C.R. Title 15 § 3268.2 use of restraints.

25. C.C.R. Title 15 § 3271 responsibility of employees.

26. C.C.R. Title 15 § 3278 control of inmates and parolees.

27. C.C.R. Title 15 § 3279 use of force.

28. C.C.R. Title 15 § 3281 corporal punishment.

29. C.C.R. Title 15 § 3391(b) & (d) employee conduct.

30. C.C.R. Title 15 § 3401.5 employee sexual misconduct.

31. Department Operation Manual ("D.O.M.") § 31140.1 - 31440.16 filing a false report while in the course of their duty.

32. California Government Code § 6254.

33. California Government Code § 19572.

34. Glass' verified complaint filed March 22, 2004.

35. Declaration of Glass pertaining to claims against Defendants in this lawsuit.

36. Declaration of inmate David Wayne Smith (K78326).

37. Copy of inmate David W. Smith's CSP-Cor trust account statement.

38. Declaration of Lamonte Rencher (D97733).

39. Verified Appeal No. CSP-C-5-01-1638 and all supporting documents.

40. Verified Appeal No. CSP-5-01-1499 and all supporting documents.

41. Verified Appeal No. CSP-C-5-01-1587 and all supporting documents.

42. Verified Appeal No. CSP-C-5-01-1629 and all supporting documents.

43. Verified Appeal No. CSP-C-5-01-2341 and all supporting documents.

44. Verified Appeal No. CSP-C-5-01-3399 and all supporting documents.

45. Verified Appeal No. CSP-C-5-01-3178 and all supporting documents.

46. Verified Appeal No. CSP-C-5-01-3530 and all supporting documents.

47. Verified Appeal No. 04A-01-01-012 and all supporting documents.

48. Verified Appeal No. 04A-01-12-008 and all supporting documents.

49. Verified Appeal No. CSP-C-5-01-4128 and all supporting documents.

50. Verified Appeal that Defendants Buckley, Castillo, and Streeter screened out, and refused to process by combining with Appeal No. CSP-C-5-01-4128.

51. Two verified appeals with "all supporting documents" that were rejected by Defendants Buckley, Castillo, and Streeter regarding Glass' damaged television that Defendant Marshall instructed Glass to file on December 14, 2001.

52. A verified appeal dated January 6, 2002 against
    Defendants Buckley, Castillo, and Streeter for
    harassing Glass in appeal procedure, for screening out
    appeals which was screened out.

53. Verified Appeal No. CSP-C-5-02-0272 and all supporting
    documents.

54. A verified appeal with all supporting documents dated
    February 14, 2002 which was stamped rejected on
    February 28, 2002.

55. Verified Appeal No. CSP-C-5-01-0639 and all supporting
    documents.

56. A verified appeal and all supporting documents which
    Defendants Buckley, Castillo, and Streeter screened on
    March 7, 2002.

57. A verified appeal dated March 18, 2002 and all
    supporting documents which Defendants Buckley,
    Castillo, and Streeter screened out.

58. Verified Appeal No. CSP-C-5-02-1188, dated March 12,
    2002 and all supporting documents.

59. Verified Appeal No. CSP-C-5-02-2056, dated May 30, 2002
    and all supporting documents.

60. Verified Appeal No. CSP-C-5-02-2079, dated June 11,
    2002 and all supporting documents.

61. Verified Appeal No. CSP-C-5-02-2885, dated August 5,
    2002 and all supporting documents.

62. A verified appeal dated August 20, 2001 and all
    supporting documents which was screened out by
    Defendants Streeter, Buckley, and Castillo.

63.  Verified Appeal No. CSP-C-5-02-3541, dated October 15, 2001 and all supporting documents.

64.  Verified Appeal No. CSP-C-5-02-2297, dated September 3, 2002 and all supporting documents.

65.  Verified Appeal No. CSP-C-5-02-3803, dated November 5, 2002 and all supporting documents.

66.  Verified Appeal No. CSP-C-5-04-1574, dated April 1, 2004 and all supporting documents.

67.  Verified Appeal No. CSP-C-5-03-4329, filed by inmate James L. Thompson (C-89908), dated November 22, 2003 and all supporting documents.

68.  California State Prison, Corcoran ("CSP-Cor") Operational Procedure ("O.P.") No. 222 Inmate personal property from 2000 to 2008.

69.  CSP-Cor. (O.P.) No. 806 mail/packages from 2000 to 2008.

B.   Defendant's Exhibits

1.   Plaintiff's abstracts of judgment, and relevant portions of any related probation reports.

2.   Abstracts of judgment for all inmate witnesses called by Plaintiff at trial.

3.   Rules Violation Reports (CDC 115), October 2, 1999 to March 3, 2004, specifically including, but not limited to, the CDC 115 dated October 23, 2001, and any attachments.

4.   Administrative Segregation Unit Placement notices (CDC 114), October 2, 1999 to March 3, 2004 and any attachments.

5.  Classification Chronos (CDCR form 128G), October 2,
    1999 to March 3, 2004, specifically, but not limited to
    the CDC 128G dated December 12, 2001, and any
    attachments.

6.  General Chronos (CDCR form 128B), October 2, 1999 to
    March 3, 2004, and any attachments.

7.  Custodial Counsel Chronos (CDCR form 128B), October 2,
    1999 to March 3, 2004, and any attachments.

8.  Medical Report of Injury or Unusual Occurrence (CDC
    7219), dated October 23, 2003, and any attachments.

9.  Any medical records or chronos approving Plaintiff's
    possession of hearing aids.

10. Inpatient medical records from October 23, 2001 to
    November 2, 2001.

11. Inmate Status Summary for Donald Glass, October 2, 1999
    to March 3, 2004

12. Inmate Movement Sheet for Donald Glass, October 2, 1999
    to March 3, 2004.

13. Video recording of Use of Force Interview, dated
    October 24, 2001.

14. Video of Cell Extraction, dated October 23, 2001.

15. Trust Account Records for Donald Glass, October 2, 1999
    to March 3, 2004.

16. Printout of all Administrative Appeals filed by Donald
    Glass, October 2, 1999 to March 3, 2004.

17. Property Records for Donald Glass, including all
    CDC-1083 Property Inventory Sheets, October 2, 1999 to
    March 3, 2004.

1    18.   Photographs of the interior of the housing unit 4-A at
2          Corcoran.

3    19.   Photographs of cell 4-A2L-44, including the food port.

4    20.   Photographs of an "extended food port."

5    Defendants indicate they will need to use video playback
6  equipment and an easel for some exhibits.  Defendants are
7  directed to <u>contact Renee Gaumnitz CRD at least one week prior to</u>
8  <u>trial</u> to make arrangements for such equipment for use during the
9  trial.

10                      XI.  DISCOVERY DOCUMENTS

11    Only specifically designated discovery requests and
12  responses will be admitted into evidence.  Any deposition
13  testimony shall be designated by page and line and such
14  designations filed with the Court on or before April 23, 2010.
15  The opposing party shall counter-designate by line and page from
16  the same deposition and shall file written objections to any
17  question and answer designated by the opposing party and filed
18  with the court on or before April 30, 2010.

19    Written discovery shall be identified by number of the
20  request.  The proponent shall lodge the original discovery
21  request and verified response with the courtroom deputy one day
22  prior to trial.  The discovery request and response may either be
23  read into evidence, or typed separately, marked as an exhibit, as
24  part of the exhibit marking process, and offered into evidence.

25  A.   <u>Plaintiff's List</u>

26    1.   Deposition of Donald Glass taken on December 2, 2005.

27    2.   Defendant Beer's response to Glass' Interrogatories,
28         Set One.

                              53

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.   Defendant Beer's response to Glass' Interrogatories, Set Two.

4.   Defendant Beer's supplemental response to Glass' Requests for Admissions, Set One.

5.   Defendant Beer's response to Glass' Requests for Admissions, Interrogatories Set One.

6.   Defendant Adkison's responses to Glass' Interrogatories, Set One.

7.   Defendant Adkison's responses to Glass' First Request for Admissions.

8.   Defendant Adkison's supplemental responses to Glass' First Request for Admissions.

9.   Defendant Buckley's responses to Glass' Interrogatories, Set One.

10.  Defendant Buckley's responses to Glass' First Request for Admissions.

11.  Defendant Butts' responses to Glass' First Request for Admissions.

12.  Defendant Castillo's responses to Glass' Interrogatories, Set One, 5 - 25.

13.  Defendant Castillo's responses to Glass's First Request for Admissions.

14.  Defendant dill's responses to Glass' Interrogatories, Set One, 5 - 25.

15.  Defendant Dill's responses to Glass' Request for Admissions, Set One.

16.  Defendant Gonzales' responses to Glass' Interrogatories, Set One, 5 - 25.

54

17.  Defendant Gonzales' responses to Glass' First Request for Admissions.

18.  Defendant Keener's responses to Glass' Interrogatories, Set One, 5 - 25.

19.  Defendant Keener's responses to Glass' First Request for Admissions.

20.  Defendant Keener's supplemental responses to Glass's First Request for Admissions.

21.  Defendant Lloren's responses to Glass' Interrogatories, Set one, 9 - 17.

22.  Defendant Lloren's responses to Glass' interrogatories, Set Two, 1 - 15.

23.  Defendant Lloren's responses to Glass' First Request for Admissions.

24.  Defendant Marshall's responses to Glass' Interrogatories, Set One.

25.  Defendant Marshall's response to Glass' First Request for Admissions.

26.  Defendant Morales' responses to Glass' Interrogatories, Set One.

27.  Defendant Morales' responses to Glass' First Request for Admissions.

28.  Defendant Morales' supplemental responses to Glass' First Request for Admissions, number 10.

29.  Defendant Sloss' responses to Glass' First Set of Interrogatories, 8 - 22.

30.  Defendant Streeter's responses to Glass' First Set of Interrogatories, 5 - 25.

1   31.   Defendant Streeter's responses to Glass' First Request
2         for Admissions.
3   32.   Defendants Responses to Glass' Request for Production
4         of Documents, Sets One (1) through Five (5).
5  B.   Defendant's List
6       Defendants do not intend to introduce discovery documents as
7  exhibits.  Defendants intend to use Plaintiff's deposition for
8  impeachment.
9                    XII.  STIPULATIONS
10      Plaintiff indicates that he "will seek a stipulation from
11 Defendants Beer and Morales that they individually, or collection
12 beaten up and caused serious facial and bodily injuries to at
13 least twenty (20) prisoners at (CSP-Cor) from 2000 through 2004,
14 and that Defendants Dill, Keener, Buckley, Castillo, Streeter,
15 and Marshall were aware and condoned (as a form of prison
16 justice) Defendants Beer and Morales (sic) violent behavior.
17 That Defendants caused the intentional destruction and
18 despoilation (sic)of the October 23, 2001 and December 28, 2001
19 excessive force interview videotapes if Defendants cannot produce
20 these videotapes at trial."  (Doc. 189, Plntf. Pretrial Stmt.,
21 pp. 25-26, ¶ 14.)
22      Defendants do not offer or request any stipulations.
23 Defendants do not stipulate to Plaintiff's statement that
24 Defendants have an extensive history of inmate abuse.
25      No party is required to enter into any stipulation(s).
26             XIII.  AMENDMENTS - DISMISSALS
27 A.   Plaintiff
28      Defendants Meis, Raymer, Anderson, Rousseau, and Yamit have

been dismissed from this action upon the Court's December 15,
2004 findings and recommendations based on Glass' failure to
state any claims upon which relief may be granted against them
and all other claims pursuant to section 1983, RLUIPA, the ADA
and the RA, were dismissed without prejudice for failure to state
any claims upon which relief may be granted.[9]

B.    **Defendants**

      Defendants indicate none.

                    **XIV.   FURTHER TRIAL PREPARATION**

A.    **Trial Briefs.**

      The parties may file a trial brief in this matter.  If they
choose to do so, any such trial brief should be submitted to the
court no later than May 2, 2010.  No extended preliminary
statement of facts is required.  The brief should address
disputed issues of substantive law, disputed evidentiary issues
of law that will not be resolved *in limine*, and any other areas
of dispute that will require resolution by reference to legal
authority.

B.    **Duty To Pre-Mark Exhibits.**

      1.    Counsel for the parties are ordered to meet and conduct
a joint exhibit conference on or before May 4, 2010 for purposes
of pre-marking and examining each other's exhibits and preparing
an exhibit list.  All of Plaintiff's exhibits will be pre-marked
with numbers 1 - 100; all of Defendants' exhibits will be pre-
marked with numbers 101-200; and all joint exhibits will be pre-

----

      [9] Plaintiff indicates that he intends to reinstate these
Defendants and claims in the event he is unsuccessful at trial.

1  marked 301-400.

2      2.   Each and every page of each and every exhibit shall be
3  individually Bates-stamped for identification purposes, and
4  paginated with decimals and arabic numerals in seriatim; i.e.,
5  1.1, 1.2, 1.3 . . ..

6      3.   Following such conference, each counsel shall have
7  possession of four (4) complete, legible sets of exhibits, for
8  use as follows:

9          a.   Two (2) sets to be delivered to the Courtroom
10 Deputy Clerk, Renee Gaumnitz, no later than 4:00 p.m. on May 7,
11 2010, an original for the court and one for the witness.

12         b.   One (1) set to be delivered to counsel for the
13 opposing party and one (1) set to be available for counsel's own
14 use.

15     4.   Counsel are to confer to make the following
16 determination as to each of the exhibits proposed to be
17 introduced into evidence and prepare separate indexes, one
18 listing joint exhibits, one listing each party's exhibits:

19         a.   Joint exhibits, i.e., any document which both
20 sides desire to introduce into evidence shall be listed as such
21 in the exhibit list in a column that notes they are admitted into
22 evidence without further foundation;

23         b.   As to any exhibit, not a joint exhibit, to which
24 there is no objection to its introduction into evidence, the
25 exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's
26 Exhibit ___ in evidence, and will be listed in the exhibit list
27 as the exhibit of the offering party;

28         c.   The exhibit list shall include columns for noting

                               58

objections to exhibits.  The first column will list any
objections as to foundation; i.e., Plaintiff's Foundation 2 -
"not authenticated."

      d.   The exhibit list shall include a second column for
noting substantive objections to exhibits based on any other
grounds; i.e., "hearsay, improper opinion, irrelevant."

      e.   The exhibit list shall include a description of
each exhibit on the left-hand side of the page, and the three
columns outlined above (as shown in the example below).

### List of Exhibits

| Exhibit # | Description | Admitted In Evidence | Objection To Foundation | Other Objection |
|-----------|-------------|----------------------|-------------------------|-----------------|

      f.   The completed exhibit list shall be delivered to
Renee Gaumnitz CRD on or before Monday, May 10, 2010 at 4:00 p.m.

      g.   If originals of exhibits cannot be located, copies
may be used, however, the copies must be legible and accurate.
If any document is offered into evidence that is partially not
legible, the Court sua sponte will exclude it from evidence.

C.   Discovery Documents.

     1.   Counsel shall file a list of discovery documents with
Renee Gaumnitz CRD at the same time and date as the witness and
exhibit lists are lodged with her, unless the discovery documents
are marked as exhibits, which counsel intend to use at trial by
designating by number, the specific interrogatory, request for
admission, or other discovery document.  Counsel shall comply
with the directions of subsection XII (above) for introduction of
the discovery document into evidence.

D.   Motions In Limine.

1    1.    The motions in limine shall be filed by April 28, 2010
2  and any responses shall be filed by May 7, 2010.   The Court will
3  conduct the hearing on motions in limine in this matter the
4  morning of the first day of trial on Tuesday, May 11, 2010, at
5  8:00 a.m. in Courtroom 3, Seventh Floor, before the Honorable
6  Oliver W. Wanger United States District Judge, at which time all
7  evidentiary objections, to the extent possible, will be ruled
8  upon, and all other matters pertaining to the conduct of the
9  trial will be settled.

10  **E.    Trial Documents.**

11    1.    **Exhibits To Be Used With Witness.**   During the trial of
12  the case, it will be the obligation of counsel to provide
13  opposing counsel not less than forty-eight hours before the
14  witness is called to the witness stand, the name of the witness
15  who will be called to testify and to identify to the Court and
16  opposing counsel any exhibit which is to be introduced into
17  evidence through such witness that has not previously been
18  admitted by stipulation or court order or otherwise ruled upon,
19  and to identify all exhibits and other material that will be
20  referred to in questioning of each witness.   If evidentiary
21  problems are anticipated, the parties must notify the court at
22  least twenty-four hours before the evidence will be presented.

23  **F.    Counsel's Duty To Aid Court In Jury Voir Dire.**

24    1.    Defense counsel shall submit proposed voir dire
25  questions, if any, to Renee Gaumnitz CRD at
26  rgaumnitz@caed.uscourts.gov, and Plaintiff shall lodge any
27  proposed voir dire questions on or before Friday, May 7, 2010, at
28  4:00 p.m.   Counsel shall also prepare a joint "statement of the

1  case" which shall be a neutral statement, describing the claims
2  and defenses for prospective jurors, to be used in voir dire.

3      2.    In order to aid the court in the proper voir dire
4  examination of the prospective jurors, counsel are directed to
5  lodge with the Court the day before trial a list of the
6  prospective witnesses they expect to call if different from the
7  list of witnesses contained in the Pre-Trial Order of the Court.
8  Such list shall not only contain the names of the witnesses, but
9  their business or home address to the extent known.  This does
10 not excuse any failure to list all witnesses in the Pre-Trial
11 Order.

12     3.    The parties shall jointly submit, to Renee Gaumnitz CRD
13 the Friday before trial, a neutral statement of the claims and
14 defenses of the parties for use by the court in voir dire.

15 G.    Counsel's Duty To Prepare And Submit Jury Instructions.

16     1.    All proposed jury instructions shall be filed and
17 served on or before Friday, May 7, 2010, by 4:00 p.m.  Jury
18 instructions shall be submitted in the following format.

19     2.    Defense counsel shall submit proposed jury
20 instructions, including verdict forms, via e-mail to
21 dpell@caed.uscourts.gov formatted in WordPerfect for Windows X3.
22 Counsel shall be informed on all legal issues involved in the
23 case.

24     3.    The parties are required to jointly submit one set of
25 agreed upon jury instructions.  To accomplish this, the parties
26 shall serve their proposed instructions upon the other fourteen
27 days prior to trial.  The parties shall then meet, confer, and
28 submit to the Court the Friday before the trial is to commence,

1   one complete set of agreed-upon jury instructions.

2        4.   Each party shall file with the jury instructions any
3   objection to non-agreed upon instructions proposed by any other
4   party.  All objections shall be in writing and shall set forth
5   the proposed instruction objected to in its entirety.  The
6   objection should specifically set forth the objectionable matter
7   in the proposed instruction and shall include a citation to legal
8   authority explaining the grounds for the objection and why the
9   instruction is improper.  A concise statement of argument
10  concerning the instruction may be included.  Where applicable,
11  the objecting party shall submit an alternative proposed
12  instruction covering the subject or issue of law.

13       5.   Format.  The parties shall submit one copy of each
14  instruction.  The copy shall indicate the party submitting the
15  instruction, the number of the proposed instruction in sequence,
16  a brief title for the instruction describing the subject matter,
17  the test of the instruction, the legal authority supporting the
18  instruction, and a legend in the lower lefthand corner of the
19  instruction: "Given," "Given As Modified," "Withdrawn" and
20  "Refused" showing the Court's action with regard to each
21  instruction and an initial line for the judge's initial in the
22  lower right-hand corner of the instruction.  Ninth Circuit Model
23  Jury Instructions should be used where the subject of the
24  instruction is covered by a model instruction.

25       6.   All instruction should be short, concise,
26  understandable, and neutral statements of the law.  Argumentative
27  or formula instructions will not be given, and should not be
28  submitted.

1      7.    Parties shall, by italics or underlining, designate any

2  modifications of instructions from statutory authority, or any

3  pattern instruction such as the Model Circuit Jury Instructions

4  or any other source of pattern instructions, and must

5  specifically state the modification made to the original form

6  instruction and the legal authority supporting the modification.

7      8.    Proposed verdict forms shall be jointly submitted or if

8  the verdict forms are unagreed upon, each party shall submit a

9  proposed verdict form.  Verdict forms shall be submitted to the

10 Courtroom Deputy Clerk on the first day of the trial.

11     9.    Failure to comply with these rules concerning the

12 preparation and submission of instructions and verdict forms may

13 subject the non-complying party and/or its attorneys to

14 sanctions.

15              XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR

16                    PRESENTATION OF EVIDENCE

17     1.    If counsel intends to use a laptop computer for

18 presentation of evidence, they shall contact Renee Gaumnitz CRD

19 at least one week prior to trial.  The Courtroom Deputy Clerk

20 will arrange a time for any attorney to bring any laptop to be

21 presented to someone from the Court's Information Technology

22 Department, who will provide brief training on how the parties'

23 electronic equipment interacts with the court's audio/visual

24 equipment.  If counsel intend to use PowerPoint, the resolution

25 should be set no higher than 1024 x 768 when preparing the

26 presentation.

27     2.  ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND

28 COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL

                              63

1  BE REFERRED TO THE COURTROOM DEPUTY CLERK.

2              XVI.   FURTHER DISCOVERY OR MOTIONS

3  A.   Plaintiff

4       1. Plaintiff states that he respectfully requests the Court

5  set a briefing schedule for motions in limine and provide a

6  reasonable opportunity to allow Plaintiff and Defendants to

7  produce responses to Plaintiff's fifth set of production of

8  documents.  Plaintiff argues that "the court erred when it ruled

9  that because Defendants misplaced or lost request for production

10  of documents set five, then (it had to be Glass' fault) Glass

11  must not have filed a set five.  (See Court Document CD

12  #_____)[10]."  (Doc. 189, Plntf. Pretrial Stmt., p. 25, ¶ 14.)

13  However, discovery closed well over a year ago – after both

14  parties requested and received extensions on the discovery

15  deadline and multiple motions to compel were filed and ruled on –

16  as were a lesser number of motions for reconsideration.

17  Plaintiff may not seek rehearing or reconsideration on discovery

18  issues at the eleventh hour.

19  B.   Defendants

20       1.   Discovery: The time permitted to conduct discovery has

21            expired. Defendants contemplate no further discovery.

22       2.   Motions: Defendants anticipate filing motions in

23            limine, a motion for separate trials of the Eighth

24            Amendment and First Amendment claims, and potentially a

25            motion under Federal Rule of Civil Procedure 50.

26

27  _____

28       [10] The court document number was blank in Plaintiff's
    Separate Pretrial Statement.  (Doc. 189, p. 25, ¶ 13.)

                            64

XVII.  SETTLEMENT

Plaintiff states that he is open to participating in a court negotiated or sponsored settlement conference and appointment of counsel for such negotiations only – citing Local Rule 16-270. However, Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1).  *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 309-10 (1989).  Further, without a reasonable method of securing and compensating counsel, this court will seek volunteer counsel only in the most serious and exceptional cases. In the present case, the Court finds both an absence of the required exceptional circumstances and an absence of the need for a settlement conference since Defendants indicate that neither negotiations nor a settlement conference would be helpful.

At the pretrial conference, Plaintiff indicated that he had secured an attorney to represent him in this action.  Any such representation will not be recognized until an attorney makes an appearance and/or files a substitution entering this action on Plaintiff's behalf.

XVIII.  SEPARATE TRIAL OF ISSUES

A.  <u>Plaintiff</u>

1.  Plaintiff does not believe bifurcation of issues is necessary.

B.  <u>Defendants</u>

1.  Defendants anticipate filing a motion for separate trials of the excessive force claim and the retaliation

65

1              claims.  Defendants reasonably believe that these issues

2              could be handled by back-to-back trials.

3      2.   Defendants also request separate trials of the issue of

4              punitive damages after any finding of liability.

5    Defendants' request for separate trials is DENIED.  However,

6 it appears most efficient and is ordered that the case proceed

7 with Plaintiff's claims regarding excessive force to be presented

8 first, followed by his claims of retaliation, concluding with

9 damages.

10        **XIX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS**

11 **A.**   **Plaintiff**

12      1.   Plaintiff respectfully requests the Court appoint an

13              expert in the field of sexual abuse and/or sodomy

14              particularly while in prison or jail.

15    Plaintiff contends that the court can appoint an impartial

16 expert pursuant to Rule 706 of the Federal Rules of Evidence.

17 The Ninth Circuit has found that Rule 706 only allows the court

18 to appoint a neutral expert.  *Students of California School for*

19 *the Blind v. Honig*, 736 F.2d 538, 549 (9th Cir. 1984), *reversed*

20 *on other grounds by* 471 U.S. 148 (1985).  Such an expert witness

21 may be appropriate if the evidence consists of complex scientific

22 evidence.  *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir.

23 1991).  Pursuant to Rule 702, "[i]f scientific, technical, or

24 other specialized knowledge will assist the trier of fact to

25 understand the evidence or to determine a fact in issue, a

26 witness qualified as an expert by knowledge, skill, experience,

27 training, or education, may testify thereto in the form of an

28 opinion or otherwise."  Fed.R.Evid. 702.

1    Given the issues in the case are excessive force and

2    retaliation, an expert would not assist the court or jury on

3    scientific, technical, or other specialized knowledge will assist

4    the court or jury.  Further, it appears, Plaintiff may be seeking

5    an expert because he is proceeding in forma pauperis and is,

6    presumably, unable to compensate an expert witness.  The Supreme

7    Court has declared that "the expenditure of public funds [on

8    behalf of an indigent litigant] is proper only when authorized by

9    Congress."  *United States v. MacCollom*, 426 U.S. 317, 321 (1976).

10   The Ninth Circuit has found that the in forma pauperis statute,

11   28 U.S.C. § 1915, does not provide for the payment of fees or

12   expenses for witnesses.  *See Dixon v. Ylst,* 990 F.2d 478, 480

13   (9th Cir. 1993); *Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir.

14   1989).  While 28 U.S.C. § 1915 provides for service to an

15   indigent litigant witnesses, it does not waive payment of fees or

16   expenses for those witnesses.  *Hadsell v. C.I.R.*, 107 F.3d 750,

17   752 (9th Cir. 1997).  As with other witnesses, the in forma

18   pauperis statute does not authorize the expenditure of public

19   funds for the appointment of an expert witness.  *See* 28 U.S.C. §

20   1915.  *See Jimenez v. Sambrano*,  2009 WL 653877 (S.D.Cal. 2009);

21   *Trimble v. City of Phoenix Police Dept*., 2006 WL 778697 (D.Ariz.

22   2006).

23   Thus, no expert witnesses will be appointed for Plaintiff in

24   this case.

25   B.   Defendants

26   1.   No expert testimony has been designated.

27   / / /

28   / / /

67

1

XX.   ATTORNEYS' FEES

2    A.   <u>Plaintiff</u>

3         Plaintiff contends that he is entitled to attorney's fees

4    pursuant to 42 U.S.C. § 1988, Local rule 54-293, *See Friend v.*

5    *Kolndzieczak*, 72 F.3d 1386, 1389-92 (9th Cir. 199); *Gates v.*

6    *Deukmejian*, 977 F.2d 1300 (9th Cir. 1992).

7         However, Plaintiff's contention that he is entitled to

8    attorney's fees if he prevails is without merit.  Plaintiff is

9    representing himself in this action.  Since Plaintiff is not

10   represented by an attorney, he is not entitled to recover

11   attorney's fees if he prevails.  *Gonzales v. Kangas*, 814 F.2d

12   1411, 1412 (9th Cir. 1987).  Thus, even if Plaintiff obtains a

13   verdict in his favor, he may not receive attorney's fees.

14   B.   <u>Defendants</u>

15        Defendants requested attorney's fees and costs and maintain

16   that Plaintiff is not entitled to attorney fees.

17        A district court may award attorneys' fees pursuant

18   to 42 U.S.C. § 1988 to a prevailing civil rights defendant

19   only if the plaintiff's action was "unreasonable, frivolous,

20   meritless, or vexatious."  *Galen v. County of Los Angeles*, 477

21   F.3d 652, 666 (9th Cir.2007).  An action may be deemed frivolous

22   "when the result appears obvious or the arguments are wholly

23   without merit."  *Id.* (citing *Christiansburg Garment Co. v. EEOC*,

24   434 U.S. 412, 422 (1978)).  A defendant may recover if this

25   standard is violated "at any point during the litigation, not

26   just at its inception."  *Id.* (citing *Christiansburg*, 434 U.S. at

27   422).  In determining whether this standard has been met, a

28   district court must avoid "post hoc reasoning by concluding that,

68

because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir.2006). Defendants have not met their burden to establish that this action is frivolous or vexatious. *Klotz v. United States*, 602 F.2d 920, 924 (9th Cir.1979).

### XXI.   ESTIMATE OF TRIAL TIME

Both parties estimate that the trial of this action will require seven to ten (7-10) court days.

### XXII.   TRIAL DATE

This case is set for trial May 11, 2010, 9:00 a.m., Courtroom 3, Seventh Floor.

### XXIII.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES

There will be eight jurors and each side will have four peremptory challenges.

### XXIV.   AMENDMENT OF FINAL PRETRIAL ORDER

1.   The Final Pretrial Order shall be reviewed by the parties and any corrections, additions, and deletions shall be drawn to the attention of the Court immediately.  Otherwise, the Final Pretrial Order may only be amended or modified to prevent manifest injustice pursuant to the provisions of Fed. R. Civ. P. 16(e).

### XXV.   MISCELLANEOUS

1.   Plaintiff requests that he appear before the jury unshackled. Defendants object to this request as Plaintiff is a Level IV, high security inmate.  It is policy in this district that inmates may not appear in court completely unshackled. Thus, Plaintiff's request that he appear unshackled before the

1    jury is DENIED.  However, Plaintiff's hands will be unshackled so

2    as to enable him to write and to sort through exhibits to present

3    his case.  All parties are to remain seated at their respective

4    table when the jury and/or perspective jurors are present.

5         2.   Defendants filed a request for a ninety (90) day

6    continuance of the trial in this case.   Defendants did not show

7    good cause for such a continuance in a case that is almost six

8    years old.  Denial of Defendants request for a ninety (90) day

9    continuance of the trial in this case will issue under separate

10   order.

11

12

13

14

15        IT IS SO ORDERED.

16   Dated:   April 23, 2010              /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28